[No. B016615. Second Dist., Div. Six. June 25, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL ALANIZ, Defendant and Appellant.

**COUNSEL**

Jeffrey Kolling, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.*—**Daniel Alaniz was convicted by plea of possessing heroin. (Health & Saf. Code, § 11350.) Prior thereto, he unsuccessfully brought a motion pursuant to Penal Code section 1538.5. He appeals contending: "I. There was no compliance with Penal Code section 1531, and non-compliance was not excusable. II. The seizure of the balloon was incident to an illegal arrest."

We view the evidence in the light most favorable to the order denying suppression as is required by the familiar rule governing appellate review (e.g., *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]) but recognize that, where, as here, the facts are undisputed, ". . . the ultimate responsibility of this court [is] to measure the facts as found by the trier against constitutional standards. [Citation.]" (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].) Prior to the police procedures here challenged, appellant had demonstrated that he was a thorn in the side of "law enforcement" and the justice system as well. Apparently not content with Fourth Amendment principles, appellant and his cohorts conspired to create their own "do-it-yourself" exclusionary rule. On three separate occasions, appellant unequivocally demonstrated that he had no intention of ever complying with lawful orders given by the police and in fact was committed to the destruction of evidence.

*Assigned by the Chairperson of the Judicial Council.

On a fourth occasion, a cohort in appellant's residence displayed similar tendencies.[1]

On March 23, 1982, Detective John Ellis of the Ventura County Sheriff's office was attempting to arrest appellant when he dropped heroin to the ground, allowing another suspect to destroy it.

On November 8, 1983, Detective Gary Marshall went to appellant's residence to execute search terms as a condition of probation previously granted. After the police announced their presence and entered, they found appellant attempting to flush heroin-filled balloons down a toilet.

On January 17, 1985, narcotics officers were commanded to search appellant's residence by a magistrate. After complying with Penal Code section 1531 and giving the occupants over 30 seconds to allow peaceful entry, the officers forced entry. They had difficulty in doing so because appellant was pushing the door the opposite way. Inside the residence one of his cohorts was attempting to swallow 23 heroin-filled balloons.

On March 7, 1985, with yet another search warrant for appellant's residence, another person at appellant's residence attempted to physically prevent the police from entering. The police immediately entered and found heroin in the bathroom sink before it could be destroyed.

With this history in mind, Detective Marshall and fellow officers went to appellant's residence to execute yet another search warrant on April 30, 1985. Approximately 20 minutes before executing it, an informant advised Marshall that appellant possessed an automatic pistol.

Keenly aware of appellant's penchant for flushing toilets even when nature did not call, the officers immediately forced entry after first loudly announcing. "'Sheriff's Department. We have a search warrant.'" **(2)** (See fn. 2.) When asked why he did not wait a reasonable time before forcing entry, Detective Marshall said: "Based on these previously described incidences, my training and experience, both personally with Mr. Alaniz and in general, I believed that Mr. Alaniz would attempt to destroy evidence upon our entry."[2]

---

[1]The police having foiled appellant's attempt to invoke the "do-it-yourself" exclusionary rule, he now seeks refuge under the umbrella fashioned by decisional law.

[2]Where compliance with "knock-notice" provisions is not excused, police officers must give the occupant of a residence a reasonable opportunity to surrender his privacy voluntarily. (*People* v. *Flores* (1982) 128 Cal.App.3d 512, 521 [180 Cal.Rptr. 368]; *People* v. *La Jocies* (1981) 119 Cal.App.3d 947, 952-953 [174 Cal.Rptr. 100]; *People* v. *Abdon* (1972) 30 Cal.App.3d 972, 977 [106 Cal.Rptr. 879].)

Detective Marshall's prediction proved correct. He found appellant near a bedroom window looking out. Marshall ordered him to lie down. When appellant refused, Marshall forced him to the ground, handcuffed him, and found a heroin-filled balloon in his hand. When asked why he had ". . . [taken] Mr. Alaniz to the ground . . .," Marshall said: "For reasons of officer safety. It's common practice to do so, and also especially since we had information that he may now be in possession of a firearm."

█ █ Appellant's first contention is without merit. In denying the suppression motion, the court said, inter alia, that ". . . the officer conscientiously and reasonably entertained the belief that the defendant would destroy the evidence." "[W]here officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard . . . an unannounced entry may be justified." (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; see also *People* v. *Dumas* (1973) 9 Cal.3d 871, 877-878 [109 Cal.Rptr. 304, 512 P.2d 1208].) A man's home may be his castle, but it is not a sanctuary for the destruction of evidence.

█ When our Supreme Court held ". . . that the magistrate was without power to give prior authorization for violation of [Penal Code] section 1531 . . ." (*Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 940 [109 Cal.Rptr. 563, 513 P.2d 611]), it also pointed out that the emergency situation which justifies unannounced entry ". . . can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements [citation], but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry." (*Ibid.*) █ Thus, even without regard to the information concerning appellant's recent possession of a firearm, the officers' decision to immediately enter was consistent with present Supreme Court decisional law. The additional information concerning a firearm made the case for such entry even more compelling.

We need not reach the merits of appellant's second contention. Although his moving papers specified that he was challenging introduction of the heroin on the theory of illegal arrest and unreasonable force in effecting it, he did not do so at the hearing on the suppression motion. █ Having failed to press for a ruling thereon, the point is simply not preserved for appellate review. (*People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283].) In any event, given appellant's history and the recent

information that he had acquired a firearm, we could not, as a matter of law, conclude that the force here utilized was unreasonable or the arrest unlawful. By refusing to obey Detective Marshall, appellant was actually delaying or obstructing him in the performance of his duties, a violation of Penal Code section 148.

The judgment (order granting probation) is affirmed.

Stone, P. J., and Gilbert, J., concurred.