SECOND DIVISION 

June 26, 2001

No. 1-99-1279

THE PEOPLE OF THE STATE OF ILLINOIS, 

Plaintiff-Appellee,

v.

ALFONZO TATE, 

Defendant-Appellant.

)))))))))

)

Appeal from the

Circuit Court of

Cook County

No. 97 CR 00187

Honorable

Stanley Sacks,

Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant was convicted after a bench trial of possession of heroin, cocaine, cannabis and unlawful use of a weapon.  He was sentenced to concurrent terms of 10 years for possession of heroin, 6 years for each conviction of possession of cocaine and cannabis and 8 years for unlawful use of a weapon.  Defendant appeals.  We reverse.

Defendant was arrested in his apartment on October 2, 1996, after execution of a search warrant revealed that he was in possession of heroin, cocaine, cannabis and a .357-caliber revolver.  These items were seized and inventoried by the police.  Defendant's address on October 2 was 6201 South Champlain, apartment 3N.  The building at 6201 South Champlain is a three-flat, with six apartments.

Defendant filed two motions to suppress the evidence seized from his apartment.  The first motion argued that the search warrant was invalid because it did not describe the place to be searched with particularity.  The warrant listed the address to be searched as 6201 South Champlain, third floor.  The warrant did not specify apartment 3N.  This motion was denied.  Defendant does not challenge the ruling on appeal.

Defendant's second motion to suppress argued that the seizure was invalid because of the police officers' failure to comply with the "knock and announce rule" before forcibly entering defendant's apartment.  Carlos Hayes and defendant testified in support of this motion.

Hayes testified that, on October 2, he went to visit his girlfriend at the third-floor apartment in the 6201 South Champlain building.  Hayes said he arrived at 10:45 p.m., about 10 minutes before the police came.  Hayes said his girlfriend was not home, but that her mother was home with four children.  Hayes admitted that his girlfriend's mother was also defendant's mother-in-law.  Hayes said he went into the kitchen and spoke with defendant, who was cleaning dishes.  

Hayes said he spoke in a low voice because the children were sleeping.  There was no television or radio on.  Hayes said he then heard two large booming noises from the front door, which was 20 to 30 feet from the kitchen.  Hayes denied hearing a knock at the door, but admitted hearing someone yell "police" after the booming noises.  Hayes then saw about 10 police officers come in with weapons drawn.  Hayes and defendant were told to lie on the floor and not move.  They were then led to the living room.  Hayes denied that defendant was in the dining room when the police came into the apartment.  Hayes also denied seeing a search warrant or that the police recovered anything from the dining room or anywhere else in the apartment.  

Defendant testified that, when Hayes came to visit, only his mother-in-law, his three children and his nephew were in the apartment.  His mother-in-law was in her bedroom and the children were sleeping.  Defendant said he was in the kitchen, in the back of the apartment.  Neither the television nor radio was on.  Defendant admitted that there is a back door to the apartment in the kitchen which leads to an alley.  The kitchen is off the right of a long hallway from the front door in the living room.  The dining room is across from the kitchen.  Defendant admitted that the front door cannot be seen from the kitchen.  There is a front bedroom off the living room.

Defendant said that, while he and Hayes were speaking in low voices in the kitchen, he heard two loud booms at the front door.  Defendant denied hearing a noise before then.  Defendant then saw police running down the hallway toward him in the kitchen with weapons drawn.   He was told to lie down and was later led to the living room.  Defendant denied that there was a gun on the dining room table.  Defendant said that the door the police came through was split in half and off the hinges.    Officer John DuBoise testified that he executed a search warrant for 6201 South Champlain, third floor, on October 2 with 11 other officers.  Two were uniformed, the rest were in plain clothes.  DuBoise said he was in plain clothes.  DuBoise testified that he arrived at the apartment at about 10:53 p.m.  DuBoise said he heard a television on in the apartment as he stood outside the front door.  He knocked on the door twice and announced his office twice but received no response.  DuBoise then entered the apartment.  He saw defendant sitting at a dining room table and Hayes in a front bedroom.  DuBoise said that some officers entered from the rear of the apartment.  DuBoise did not know whether those officers knocked first.  

DuBoise admitted, on cross-examination, that neither his arrest nor case reports mentioned that he knocked on the door before entering, announced his office or purpose, that a television was playing loudly or that he gave the occupants time to respond to his knocks.  DuBoise admitted that a search warrant data sheet showed that 8, not 12, men entered the apartment that night.  DuBoise denied forcing the door down with a battering iron, claiming the door came open after just a "gentle tap."  DuBoise admitted he had no information that defendant was destroying contraband. 

On redirect examination, DuBoise said that his reports were intended as summaries, not detailed descriptions of everything that happened.  DuBoise also said that he knocked on the door twice, "pretty hard."  

The trial court then heard oral argument from defendant and the State.  Defendant argued that the officers' failure to knock and announce violated the fourth amendment and that no recognized exception to the "knock and announce" rule applied.  The State argued that the police did knock and announce.  The State, relying on 
Wilson v. Arkansas
,  
514 U.S. 927, 934, 131 L. Ed. 2d 976, 982, 115 S. Ct. 1914,
 1918 (1995)
, alternatively argued that the search and seizure here were nevertheless reasonable because the officers' awareness that drug transactions were taking place could have reasonably led them to believe that weapons would be present or evidence destroyed.    

The trial court denied the motion to suppress in a written order read into the record.  The court found that the officers failed to comply with the "knock and announce" rule:

"Credible testimony at the pre-trial motion to suppress from Carlos Hayes and the defendant *** indicated that while the officers upon entry into the apartment did announce that they were the police, there was no knock prior to the use of force to open the front door to the apartment."

The trial court then considered whether the violation required suppression of the evidence seized:

"This Court having found that the arresting officers failed to comply with the principle of 'knock and announce' by entering the apartment of Petitioner 'simultaneously' with their announcement (without having first knocked) there remains in this Court's mind the 
critical
 question of whether exclusion of evidence as a consequence is appropriate, i.e., whether exclusion of probative/reliable evidence is required."  (Emphasis in original.) 

The court then reasoned that the independent source and/or inevitable discovery doctrines trumped  the exclusionary rule:

"[I]t is this Court's view that contraband/evidence seized under the authority of a valid search warrant is admissible under the 'independent source' and 'inevitable-discovery' exceptions to the exclusionary rule, even where 'knock and announce' has not been complied with.  The [exclusionary] rule should not be extended to bar admission of evidence that could have been seized–and, in fact, was seized under the authority of a valid search warrant."  

Officer DuBoise testified at defendant's bench trial.  DuBoise said that he and a team of officers executed a search warrant for 6201 South Champlain.  Defendant was sitting at a dining room table when DuBoise entered the apartment through the front door.  He was three or four feet away from defendant when DuBoise saw defendant try to wipe a large amount of contraband off the table and walk into the kitchen.  Defendant was then arrested by Officer Shepherd.  Defendant admitted that the contraband was his.  DuBoise showed defendant the search warrant and then went to the dining room table.  DuBoise saw what he suspected to be heroin, cocaine and marijuana on the table and the floor.  He also saw a .357-caliber revolver.  The drugs and revolver were placed in inventory bags.

DuBoise also recalled seeing Hayes and three or four children in one of the bedrooms.  He also saw a woman in one of the bedrooms.  DuBoise conducted name checks on everyone in the apartment before taking defendant to the police station.  

A custodial search of defendant revealed he had $339 in cash and a state-issued identification, listing his name and 6201 South Champlain, 3N, as his address. 

Officer Turan Beamon testified that he also participated in the October 2, 1996, search of the apartment.  Beamon testified he was at the back door.  There were no lights on in the kitchen, but he could see a light on in another room.  Beamon heard the forced entry through the front door and then saw a shadow come toward the kitchen.  A few seconds later, an officer opened the back door, letting Beamon in.  Beamon could not remember which officer opened the door.  He said it could have been "Officer Herd."  Beamon saw defendant leaning up against the wall in handcuffs and foil packets on the floor by the dining room table.  Beamon said he went into a bedroom to find proof of residence.   He found mail addressed to defendant.  

The parties then stipulated that forensic evidence from the Illinois State Police Crime Laboratory would show that the substance taken from the apartment tested positive for cocaine, heroin, and marijuana.  The parties also stipulated that the chain of custody was maintained.  The State then rested.  Defendant rested after the parties stipulated to Hayes' testimony presented at the earlier motion to suppress hearing.

The trial court found defendant guilty of possession of heroin, cocaine, cannabis and unlawful use of a weapon.  He was sentenced to concurrent terms of 10 years for heroin possession, 6 years for each conviction of cannabis and cocaine possession and 8 years for the weapons violation.  

Defendant raises five issues on appeal: whether (1) the trial court should have granted the motion to suppress based on the officers' failure to comply with the "knock and announce" rule; (2)  the trial court can only impose one sentence for simultaneous possession of more than one controlled substance; (3) the mandatory Class X sentencing violates the rule set out in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (4) the extended-term sentences are void  as imposed; and (5) the mittimus should be corrected.  We need not address the last four issues since we conclude that violation of the "knock and announce" rule requires suppression of the evidence seized.  

We must determine whether the independent source and/or the inevitable discovery doctrines apply to save evidence seized under a valid search warrant when that warrant was executed in violation of the "knock and announce" rule.  We conclude that neither exception to the exclusionary rule applies here.

A trial court's ruling on a motion to suppress is generally reviewed for manifest error.  
People v. Wright
, 183 Ill. 2d 16, 21, 697 N.E.2d 693 (1998).  Our review is 
de novo
 where, as here, the question is one of law
.  
Wright
, 183 Ill. 2d at 21.  

Implementation of the exclusionary rule assumes that the challenged evidence is the product of some illegal government activity.  
Nix v. Williams
, 467 U.S. 431, 444, 81 L. Ed. 2d 377, 387, 104 S. Ct. 2501, 2509 (1984).  The record here shows that the trial court ruled and the State concedes the knock and announce violation.  This violation makes the search presumptively unreasonable.  See 
Segura v. United States
, 468 U.S. 796, 804, 82 L. Ed. 2d 599, 608, 104 S. Ct. 3380, 3385 (1984) (evidence obtained as a direct result of an unconstitutional search or seizure is subject to exclusion).  The State does not contend that the unannounced entry was warranted by exigent circumstances.  Our analysis considers only the application of the proffered exceptions to the exclusionary rule.  

Our supreme court has twice considered the constitutionality of search warrants executed under a so called "no knock" statute that authorized unannounced entries  if certain circumstances were present.  

In 
People v. Krueger
, 175 Ill. 2d 60, 675 N.E.2d 604 (1996), the court found unconstitutional a statute authorizing unannounced entry based solely on the occupant's possession of firearms.  
Krueger
, 175 Ill. 2d at 70.  The court recognized that exigent circumstances could justify an unannounced entry but reasoned that the mere presence of firearms did not create an exigent circumstance.  
Krueger
, 175 Ill. 2d at 68.   The 
Krueger
 court also declined to apply the "good-faith" exception articulated in 
United States v. Leon
, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405  (1984), as extended in 
Illinois v. Krull
, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987).  
Leon
 held that the exclusionary rule will not apply where an officer, in good faith, relies on a search warrant later found to be unsupported by probable cause.  
Leon
, 468 U.S. at 920, 82 L. Ed. 2d at 697, 104 S. Ct. at 3419.   This rule was extended in 
Krull
 to apply to an officer's good-faith reliance on a search warrant issued under a statute later found unconstitutional.  
Krull
, 480 U.S. at 347-49, 94 L. Ed. 2d at 373-75, 107 S.Ct. at 1165-67. 

In 
People v. Wright
, 183 Ill. 2d 16, 697 N.E.2d 693 (1998), our supreme court again found unconstitutional a statute authorizing an unannounced entry when firearms are accessible to an occupant.  
Wright
, 183 Ill. 2d at 24.  Relying on 
Krueger
, the 
Wright
 court said that the presence of firearms will support an exigent circumstance if the officers have a reasonable belief that the firearms will be used against them.  
Wright
, 183 Ill. 2d at 24, citing 
Krueger
, 175 Ill. 2d at 70.  The 
Wright
 court then declined to apply the "good-faith" exception to the exclusionary rule.  
Wright
, 183 Ill. 2d at 25.  

We believe our supreme court would be equally reticent to apply the trial court's analysis here–that the independent source and inevitable discovery rules apply to trump the exclusionary  rule.   In 
Segura v. United States
, the Supreme Court said that the exclusionary rule does not apply where the government learns of the challenged evidence from an independent source.  
Segura
, 468 U.S. at 805, 82 L. Ed. 2d at 608-09, 104 S. Ct. at 3385.  The court then held that the evidence seized during a second, lawful entry under a valid search warrant would not be suppressed despite an earlier, warrantless entry that revealed the same evidence.  
Segura
, 468 U.S. at 816, 82 L. Ed. 2d at 616, 104 S. Ct. at 3391.

In 
Murray v. United States
, 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988), the Supreme Court explained:

"The independent source doctrine *** [rests] upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied.  
So long as a later, lawful seizure is genuinely independent of an earlier, tainted one *** there is no reason why the independent source doctrine should not apply
."  
(Emphasis added.) 
 
Murray
, 487 U.S. at 542, 101 L. Ed. 2d at 483, 108 S. Ct. at 2535.   

The requirement that the source be "genuinely independent" and the product of a "later, lawful seizure" cuts against the State's argument here that the valid search warrant triggers the independent source doctrine.  That the information supporting the warrant was known before the illegal entry was made is irrelevant.  The State cannot escape from the record here: that the otherwise valid search warrant was executed in violation of the fourth amendment.  The violation is directly connected to the illegal entry.  A contrary conclusion would render the "knock and announce" requirement meaningless and allow the exception to swallow the rule.  "Given the longstanding common-law endorsement of the practice of announcement" (
Wilson v. Arkansas
, 514 U.S. 927, 934, 131 L. Ed. 2d 976, 982, 115 S. Ct. 1914,
 1918 (1995)),
 we conclude that independent source does not apply under these facts.  
 We note that other cases directly confronting this issue have so concluded.  See 
United States v. Dice
, 200 F.3d 978 (6th Cir. 2000);  
United States v. Espinoza
, 105 F. Supp. 2d 1015 (E.D. Wis. 2000); 
United States v. Marts
, 986 F.2d 1216 (8th Cir. 1993); 
United States v. Haddix
, 239 F.3d 766 (6th Cir. 2001); 
United States  v. Meixner
, No. 00-CR-20025-BC (E.D. Mich. October 26, 2000).
  

The same reasoning defeats the State's inevitable discovery argument.  The inevitable discovery doctrine is 
an extrapolation of the independent source doctrine.  
Murray
, 487 U.S. at 539, 101 L. Ed. 2d at 481, 108 S. Ct. at 2534.  

Last, we disagree with the State that application of the exclusionary rule here hampers the  purpose of the rule.  The exclusionary rule is invoked to deter future police misconduct.  
Wright
, 183 Ill. 2d at 25.  That purpose is served here, where the exclusionary rule in article 
I, section 6, of the Illinois Constitution affords greater protection than its federal counterpart.  
Kreuger
, 175 Ill. 2d at 75-76; Ill. Const. 1970, art. I, §6.  

The motion to suppress evidence should have been granted once the trial court found that the  officers failed to knock and announce their office before entering the apartment.  Defendant's sentence and conviction are vacated.  The judgment of the trial court is reversed.

Reversed.

GORDON and COUSINS, JJ., concur.