**Gilbert Coleman PRICE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–01–01028–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 12, 2002.

Opinion on Overruling of Rehearing
Nov. 27, 2002.

Bob Wicoff, Houston, for Appellant.

Eric Kugler, Houston, for the State.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Gilbert Coleman Price appeals his conviction and sentence of three years deferred adjudication for possession of more than four but less than two-hundred grams of cocaine. Appellant contends the trial court erred in overruling his motion to suppress evidence pursuant to the Fourth and Fourteenth Amendments to the United States Constitution because the police violated the "knock and announce" rule. We reverse and remand for further proceedings consistent with this opinion.

### Procedural Background

On April 23, 2001, Officer Michael R. Burdick executed a search and arrest warrant at appellant's home. Prior to trial, appellant filed a motion to suppress evidence, claiming the search and arrest "were conducted without legal justification" because the officers "did not comply with the 'knock, announce, and wait' rule set out in federal law." The motion to suppress was heard on affidavits. Appellant's affidavit asserted that "[w]hen the police entered [his] house just before midnight on April 23, 2001, they did so via a forced hard entry through the side door. At no time did [he] or any of the other people in [his] house hear the police knock and announce themselves before they broke through the side door." Without presenting additional evidence, the State produced a single affidavit that had been submitted by Officer Burdick in support of the warrant to search appellant's home. The State relies *exclusively* upon the following sentence in the affidavit: "It has been the experience of your affiant that individuals who are in the possession of controlled substances are normally in pos-

session of firearms and such should be considered armed and dangerous." Defendant pled guilty but reserved the right to appeal the trial court's denial of his motion to suppress.

## Standard of Review

 We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). We give great deference to a trial court's determination of historical fact. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). When, as here, the trial court does not file findings of fact, we assume the court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). We conduct de novo review of mixed questions of law and fact that do not turn on the credibility and demeanor of a witness. *Guzman,* 955 S.W.2d at 89.

## Legal Development

Whether the common law requirement that police knock and announce their presence prior to entering the home to search and/or arrest was covered under the Fourth Amendment had not been decided by the United States Supreme Court prior to the publication of *Wilson v. Arkansas.*[1] 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). In *Wilson,* the police entered the defendant's home by opening a screen door without first announcing their presence. *Id.* at 929, 115 S.Ct. 1914.

Once inside, the officers seized marijuana, methamphetamines, valium, narcotics paraphernalia, a gun, and ammunition. *Id.* Disagreeing with the Arkansas Supreme Court, the Supreme Court held that the common law "knock and announce" rule forms a part of the reasonableness inquiry under the Fourth Amendment. *Id.* at 930, 115 S.Ct. 1914. Although *Wilson* involved a search, not an arrest, LaFave indicates there is "little if any doubt" that the execution of arrest warrants also requires notice. 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.2(a) (3d ed.1996). *Wilson* incorporated the knock-and-announce rule into the Fourth Amendment but left unidentified the circumstances under which the failure to knock and announce would be excused. 514 U.S. at 936, 115 S.Ct. 1914. This fact intensive question was left to the lower courts. *Id.*

Even before the Supreme Court's jurisprudential shift in *Wilson,* lower courts invoked both the *Ker* factors and similar rationales in analyzing whether a failure to knock and announce would be permissible. *See, e.g., United States v. Lalor,* 996 F.2d 1578, 1584 (4th Cir.1993); *People v. Rosales,* 68 Cal.2d 299, 66 Cal.Rptr. 1, 437 P.2d 489, 493 (1968) (providing exceptions for danger to the officer, destruction of evidence, or frustration of arrest); *People v. Gastelo,* 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706, 707–08 (1967); *see also Reynolds v. State,* 46 Ala.App. 77, 238 So.2d 557, 559–60 (1970). Other approaches provided for a blanket exception

---

1. The best authority available had been a plurality decision in a challenge to a no-knock arrest in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plurality opinion). *See also* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.8(a), 6.2(a) (3d ed.1996) (discussing entry without notice to search and arrest). The four dissenters in *Ker* would have included the notice requirement within the Fourth Amendment and identified three exceptions: (1) actual awareness of the officers' authority or presence; (2) imminent danger of bodily harm to the officers; or (3) actual and justifiable belief by the officers that an escape or destruction of evidence is underway. *Ker,* 374 U.S. at 47, 83 S.Ct. 1623 (Brennan, J., dissenting)

based on the assumption, usually viable in narcotics cases, that evidence could always be easily and rapidly discarded

Two years after *Wilson,* in *Richards v. Wisconsin,* the Supreme Court adopted the first approach and rejected the latter, holding:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances,* would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (emphasis added); *see also Roska v. Peterson,* 304 F.3d 982, 989–90 (10th Cir. 2002). The court reasoned that "[t]his standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Richards,* 520 U.S. at 394.

As *Richards* and *Wilson* are such recent cases, few intermediate Texas courts have addressed these issues. *See Broussard v. State,* 68 S.W.3d 197, 199 n. 2 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (en banc) (finding evidence insufficient to demonstrate counsel ineffective for failing to file a suppression motion based upon officers' unannounced entry); *Stokes v. State,* 978 S.W.2d 674, 676 (Tex.App.-Eastland 1998, pet. ref'd) (discussed below); *Robinett v. Carlisle,* 928 S.W.2d 623, 627 n. 5 (Tex. App.-Fort Worth 1996, pet. denied). No opinion from the Texas Court of Criminal Appeals is on point.

## Discussion

■ The State does not dispute appellant's claim that Officer Burdick failed to knock and announce prior to entering the home. Rather, the State contends the search was lawful because Officer Burdick's warrant affidavit demonstrates knocking and announcing would have been dangerous and futile, one of the exceptions to the rule set out in *Richards.* 520 U.S. at 394, 117 S.Ct. 1416.

It is instructive to examine the circumstances under which courts have upheld no-knock entries. In *Stokes v. State,* a no-knock entry was upheld where the officer testified he had received reliable information from informants that guns (as well as marijuana) were in the residence. 978 S.W.2d at 675. Reasonable suspicion has been found where affidavits averred that a gun had been seen in the home more than five days prior to execution of the warrant. *United States v. Brown,* 276 F.3d 14, 14 (1st Cir.2002) (equally divided en banc decision). Other courts have affirmed no-knock entries upon a showing that the defendant had little more than a violent past. *See, e.g., United States v. Reilly,* 224 F.3d 986, 991 (9th Cir.2000) (defendant sought in another jurisdiction for numerous violent offenses); *United States v. Jewell,* 60 F.3d 20, 23–24 (1st Cir.1995) (defendant kept a pit bull dog in the apartment, and had an "extensive history of arrest and conviction for violent crimes."); *but see United States v. Bates,* 84 F.3d 790, 796–97 (6th Cir.1996) (finding no-knock entry illegal where, despite information that a gun was in the apartment, there was neither an indication that the defendants were violent and likely to use a weapon if confronted by law enforcement officers nor evidence they had a criminal history of violence or a reputation indicating they were likely to be violent). Additionally, affirmance has sometimes been based on combinations of a defendant's criminal past, violent threats, and police officers' suspicion that the defendant knew he was wanted. *See, e.g., United States v.*

*Hawkins,* 139 F.3d 29, 32 (1st Cir.1998). Exigent circumstances have also been found where the warrant stemmed from an investigation of a violent crime. *See, e.g., State v. Nordstrom,* 200 Ariz. 229, 25 P.3d 717, 734 (2001) (multiple murders).

The showing required to invoke *Richards'* danger exception is "not high." 520 U.S. at 394–95, 117 S.Ct. 1416. Even with this low burden, however, our examination of the record reveals no evidence demonstrating the officers in this particular case had reason to believe appellant himself was either armed or dangerous. Officer Burdick's statement in his warrant affidavit, "It has been the experience of your affiant that individuals who are in the possession of controlled substances are normally in possession of firearms and such should be considered armed and dangerous," is not sufficient to justify a no-knock entry. *See State v. Cohen,* 191 Ariz. 471, 957 P.2d 1014, 1016 (1998) (affirming suppression under similar facts).[2] To be sure, drug dealers frequently respond with violence when threatened with arrest. Nevertheless, "if a per se exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416; *see also United States v. Valdez,* 302 F.3d 320, 322 (5th Cir. 2002) (affirming suppression where officer justified the entry on the grounds that "defendant was a known drug dealer and that known drug dealers are prone to certain violent behavior.").

As the State points out, *Richards* did not involve the review of reasonableness under specific facts, but rather a judicially created, explicit exception to the knock-and-announce requirement. However, based on this distinction, no authority permits the State's conclusion that "while [Officer Burdick's] statement is couched in terms of the general, the fact that such a statement was included in this specific affidavit indicates that the affiant believed that the target in this case would be armed and dangerous." The language in *Richards* requiring evidence of dangerousness under the *particular circumstances,* as well as the cases that have followed it, are contrary to the State's argument. *See Garza v. State,* 632 N.W.2d 633, 638–39 (Minn.2001) (affirming suppression where unannounced search defended only by general statement in affidavit that "Persons involved in Drug trafficking will destroy evidence ... [and] will use violence ..."); *State v. Johnson,* 168 N.J. 608, 775 A.2d 1273, 1279–82 (2001) (suppression affirmed where officers' testimony regarding risk of violence and destructibility of evidence was conclusory and lacked specific factual references); *Mazepink v. State,* 336 Ark. 171, 987 S.W.2d 648, 655 (1999) (suppression appropriate even though police officers testified as to their general experience in serving drug search warrants); *People v. Wright,* 183 Ill.2d 16, 231 Ill.Dec. 908, 697 N.E.2d 693, 696 (1998) (affirming suppression where evidence that firearms were in residence but no evidence that the weapons would be used against police if announcement made); *Cohen,* 957 P.2d at 1016.

Here there was no threat of violence, no history of violence, no reliable or even

---

**2.** In *Cohen,* the only evidence cited by the State was the lead officer's statement that "when [felony drug suspects] know who you are, and they see you, they know why you are there, that to protect evidence from being destroyed or for some type of guns to be drawn or somebody escaping out the back door, we make entry and secure the scene." 957 P.2d at 1016.

unreliable indication arms were actually in appellant's home, and no indication appellant knew he was under suspicion. The mere assumption that those in possession of controlled substances are normally also in possession of firearms is insufficient as a matter of law to eliminate the notice requirement. *Richards,* 520 U.S. at 394–95, 117 S.Ct. 1416; *Valdez,* 302 F.3d 320, 322. We sustain appellant's issue.

Accordingly, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.[3]

## OPINION ON MOTION
## FOR REHEARING

This court reversed appellant's conviction because the officers executing the search and arrest warrant violated the Fourth Amendment in failing to knock and announce their presence. The State urges us to reconsider our holding in its motion for rehearing. In so doing, the State argues: (1) the appellant failed to preserve his sole issue on appeal by properly objecting in the trial court on the basis of the Fourth Amendment knock-and-announce rule; (2) this court erred in holding the search violated the Supreme Court's prohibition against blanket no-knock searches in all felony drug cases; and (3) this court erred in applying the exclusionary rule to suppress evidence where there was no causal connection between the alleged violation of the knock-and-announce rule and

the acquisition of the evidence. We overrule the State's motion.

## I. PRESERVATION OF ERROR

In its first ground for rehearing, the State contends the appellant did not preserve his sole issue on appeal by failing to properly object in the trial court on the basis of the Fourth Amendment knock-and-announce rule. The State did not make this argument in its original appellate brief, and thus, we are presented with this issue for the first time in its motion for rehearing. If a party raises a new ground for the first time on motion for rehearing, the decision to consider the new matter is left to the sound discretion of the appellate court. *Rochelle v. State,* 791 S.W.2d 121, 124 (Tex.Crim.App.1990).

Occasionally, justice may require that an appellate court consider a motion for rehearing to decide an issue not presented in the original briefs. *See Hughes v. State,* 878 S.W.2d 142, 151 (Tex.Crim. App.1992). Through such a motion, a party may object to an appellate court's failure to address systemic requirements on original submission. *Id.* This mechanism maintains the essential integrity of our system by forcing appellate courts to observe systemic requirements. *Id.* One such requirement is the failure of an appellate court to address the preservation or forfeiture of error. *See id.* Fulfilling this

---

**3.** Although not raised in appellant's brief, a closely related and perhaps more vital issue—the type of notice that will pass muster under the Fourth Amendment—has also eluded consideration by Texas courts. Lacking definitive guidelines, police officers in several Texas counties have testified that they perhaps violate the rule in *Wilson* and *Richards* in all cases. *See United States v. Cantu,* 230 F.3d 148, 154 n. 1 (5th Cir.2000) (Calhoun County); *Broussard v. State,* 68 S.W.3d 197, 210 n. 4 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (en banc) (Cohen, J., dissenting) (Harris

County); *see also* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.8(c) (3d ed. 1996 & Supp.2002) (police must provide notice of both authority and purpose, and then wait long enough to give occupant a reasonable opportunity to surrender). LaFave does indicate that the requirement that police wait for refusal has often been narrowly construed. *Compare United States v. Knapp,* 1 F.3d 1026, 1030–31 (10th Cir.1993) (conviction affirmed where officers waited only 10 to 12 seconds for amputee to answer the door).

independent duty to scour the record for waiver, we do not find appellant waived his challenge.

■ The State contends that appellant should not be allowed to claim violations of the Fourth Amendment common law knock-and-announce rule on appeal when his arguments at trial referenced only its federal statutory counterpart.[1] This court has remarked that in order to preserve error, a timely and sufficiently specific request, objection, or motion must be made to the trial court. *Laney v. State*, 76 S.W.3d 524, 527 (Tex.App.-Houston [14th Dist.] 2002, pet. filed). The requirement for specificity remains even when the complaint rests on constitutional grounds. *Id.* Thus, to adequately preserve error, appellant should have presented the court with a motion stating the specific Fourth Amendment grounds for the ruling sought-suppression of the evidence. *See Espinosa v. State*, 29 S.W.3d 257, 260 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

At the hearing on the motion to suppress, appellant's counsel argued:

[I]t is agreed by the State and it's in the police report as well as [appellant's] affidavit that the officers didn't knock. They didn't announce. They kicked the backdoor in and came in. That's against federal law. And while they're trying to establish a blanket exception in drug cases, the Supreme Court expressly turned that request down. It was in 1997 where they said you can't do it just because there might be drugs in there.

In his memorandum of law in support of the motion to suppress, appellant stated that the officers executing the warrant did not comply with the knock, announce, and wait rule set out in federal law. The argument for this section of the memorandum references the federal knock-and-announce statute but also relies on *Richards v. Wisconsin* for the proposition that blanket exceptions to the knock-and-announce rule in felony drug investigations are not permissible. 520 U.S. 385, 387–88, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). *Richards* dealt exclusively with the Fourth Amendment knock-and-announce requirement; it was not decided on the basis of the federal knock-and-announce statute. *Id.* Appellant also attached an article from the monthly publication of the National Association of Criminal Defense Lawyers to his motion referencing the constitutional basis for the rule. *See* Sheryl Gordon McCloud, *Will State or Federal Constitutional Law Save the 'Knock, Announce & Wait' Rule from a Drug Exception?*, THE CHAMPION, April 1997, at 12, available on Westlaw at 21–APR CHAMP 12.

After reviewing appellant's motion to suppress, the memorandum of law in support of the motion, and the ensuing argument on its behalf, we find appellant sufficiently alerted the trial court to the constitutional basis of his objection.

## II. THE FOURTH AMENDMENT

The State maintains this court erred in holding that the search violated the Supreme Court's prohibition against blanket no-knock searches in all felony drug cases.[2] We have already held that the *Richards*

---

1. The federal knock and announce statute regulates only the conduct of federal officers. *United States v. Gatewood*, 60 F.3d 248, 249 (6th Cir.1995) (finding that the federal knock and announce statute has no application when state officers, acting totally without federal involvement, seize evidence that is later offered in a federal prosecution); *United*

States v. Heacock, 31 F.3d 249, 258 (5th Cir. 1994) (noting that the federal knock and announce statute has no application to a state search).

2. In analyzing this issue, as well as the issue of suppression as the appropriate remedy, we find guidance in the opinions of courts re-

requirement of particularized evidence to justify the no-knock entry defeats the State's argument in this case. Well before *Richards*, lower courts demanded specificity of law enforcement's professed justifications for no-knock entries. Rooted in these opinions is the concern that without particularity officers can enter a private residence sans announcement with only the most vague justification.[3] In its motion for rehearing, the State claims that the no-knock entry in question was justified with specific evidence under the particular circumstances of the case. In so doing, the State does concede that within

the protection provided by the Fourth Amendment is the common law principle that police officers must knock-and-announce their presence before attempting a forcible entry into a home. *See Richards*, 520 U.S. at 394, 117 S.Ct. 1416; *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (noting "the requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application.").[4] First, the State reasserts that the

viewing purported violations of the Fourth Amendment as well as the federal and various state knock-and-announce statutes.

**3.** Over the years, other courts have stated this particularity requirement in different ways. As the California Supreme Court observed:

Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen.

*People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706, 708 (Cal.1967). The Sixth Circuit has concluded that law enforcement cannot justify a no-knock entry based upon "a mere hunch or suspicion." *See United States. v. Bates*, 84 F.3d 790, 795 (6th Cir.1996). According to the Tenth Circuit, the officers' decision to enter without announcement cannot be based upon generalities bearing no relation to the particular premises being searched or the particular circumstances surrounding the search. *See United States v. Stewart*, 867 F.2d 581, 585 (10th Cir.1989). As the Ninth Circuit has observed, exigent circumstances may not be found if predicated upon general fears of the officers executing

the search warrant. *See United States v. Becker*, 23 F.3d 1537, 1541 (9th Cir.1994).

**4.** In *Wilson*, Justice Thomas traced the knock-and-announce principle from its origins in thirteenth-century England to its early widespread acceptance in the United States. 514 U.S. at 931–34, 115 S.Ct. 1914. Surveying the history of the common law principle, Justice Thomas invoked the often-quoted *Semayne's Case*, which set forth the following principle:

[T]he sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the King's process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open the doors.

5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B.1603). For an extraordinarily thorough review of the evolution of the knock-and-announce rule at common law, *see Commonwealth v. Cundriff*, 382 Mass. 137, 415 N.E.2d 172, 174–78 (Mass.1980); *see also State v. Mooring*, 115 N.C. 709, 20 S.E. 182, 182 (N.C.1894) (noting the "well settled" rule that an officer may open the doors of a home after "demand of admittance"); *State v. Smith*, 1 N.H. 346, 346 (N.H.1818) ("For when a felony has been committed, or dangerous wound given, or even where a minister of justice comes armed with process founded on a breach of the peace, the party's own house is no sanctuary for him; but the doors may be forced after the notification, demand and refusal, after mentioned.")

exigency created by the likelihood that appellant was armed and dangerous justified the no-knock entry. We have found this justification unpersuasive. Second, the State maintains that the exigency created by the likelihood that appellant would destroy evidence permitted the unannounced entry. The State did not place significant weight on the destruction-of-evidence in its original appellate brief, as it based its argument primarily upon the belief that the suspect was "armed and dangerous." In its motion for rehearing, however, the State dedicates more attention to this doctrine.

### A. Exigency and the Safety of Officers

The first exigency offered by the State to justify the unannounced entry is the likelihood that appellant was armed and dangerous and thus a peril to the entering officers. We have already held that the mere assumption that those in possession of controlled substances are normally also in possession of firearms is insufficient as a matter of law to relieve the authorities of their historical duty to knock-and-announce their presence. *Compare United States v. Valdez*, 302 F.3d 320, 322 (5th Cir.2002); *United States v. Stewart*, 867 F.2d 581, 582–83 (10th Cir.1989).[5] We rejected the State's arguments to the con-

trary because the affidavit upon which a warrant is based cannot be premised upon generalities and stereotypes of drug dealers in the abstract. *Valdez*, 302 F.3d at 322; *Stewart*, 867 F.2d at 582–83; *Garza v. State*, 632 N.W.2d 633, 638–39 (Minn. 2001). Were we to accept such a statement as a justification for a no-knock entry, we would effectively resurrect the blanket exception rejected by the Supreme Court in *Richards*, 520 U.S. at 387–88, 117 S.Ct. 1416.

### B. The Destruction of Evidence

▮▮▮▮ The second exigency the State invokes to justify the unannounced entry is the likelihood of the destruction of evidence. We did not specifically address this issue in our opinion. Buttressing this argument is the State's observation that the type of narcotic at issue, cocaine, is easily destroyed.[6] Although the experienced officer may surmise that a party is likely to dispose of evidence when faced with the execution of the search warrant, such suspicions do not create an exigency to justify an unannounced entry. *See United States. v. Bates*, 84 F.3d 790, 796 (6th Cir.1996). Here, the police officers knew only that appellant was connected to drugs and that such persons may dispose of evidence under specific circumstances.

---

**5.** Though we cannot justify the use of stereotypes and stress the importance of the particularities of exigency, we do acknowledge the great difficulties in confronting dealers of narcotics in their homes. *See United States. v. Bonner*, 874 F.2d 822, 824 (C.A.D.C.1989) ("As common sense, and bitter experience, would suggest, the law has uniformly recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia.") (quotations omitted).

**6.** Courts are often confronted with this argument. *Compare State v. Gassner*, 6 Or.App.

452, 488 P.2d 822, 828 (Or.Ct.App.1971) (suggesting that an "easily disposable amount of narcotics" may meet minimum showing necessary to invoke the destruction-of-the-evidence exception) *with People v. Marinez*, 160 Ill.App.3d 349, 112 Ill.Dec. 193, 513 N.E.2d 607, 609 (Ill.App.Ct.1987) ("The mere fact that narcotics, which by their very nature are easily destroyed does not in and of itself create an 'exigent circumstance' which would justify the police in failing to knock-and-announce.") *and State v. Carufel*, 112 R.I. 664, 314 A.2d 144, 148 (R.I.1974) (finding the presence of easily disposable drugs does not alone justify an unannounced entry).

To avail themselves of this exception to the knock-and-announce rule, officers must reasonably conclude that the resident has resolved to dispose of the evidence in the event of police intrusion. *People v. Alaniz*, 182 Cal.App.3d 903, 227 Cal.Rptr. 575, 577 (Cal.Ct.App.1986); *State v. Harris*, 12 Wash.App. 481, 530 P.2d 646, 655 (Wash.Ct.App.1975). The police should have at least some specific facts as to the case at hand that would justify their apprehension. *Cf. Berryman v. State*, 368 So.2d 893, 895 (Fla.Dist.Ct.App.1979) (interpreting state knock-and-announce statute). The police did not see appellant engaged in the act of destroying evidence, nor had they witnessed any specific acts suggesting that destruction was imminent. Similarly, the authorities had no anecdotal evidence that appellant had destroyed or attempted to destroy evidence upon a previous encounter with police. The mere fact that drugs are involved does not give the police probable cause to believe that evidence will be destroyed so as to justify an unannounced entry. *Reynolds v. State*, 46 Ala.App. 77, 238 So.2d 557, 559–60 (Ala.Crim.App.1970); *People v. Marinez*, 160 Ill.App.3d 349, 112 Ill.Dec. 193, 513 N.E.2d 607, 609 (Ill.App.Ct.1987).

We understand that it may at times be difficult for police to justify an entry based on this exception. Certainly, allowing a drug dealer a sufficient amount of time to destroy evidence of a crime is not the purpose of the knock-and-announce rule. *People v. Stevens*, 460 Mich. 626, 597 N.W.2d 53, 64 (Mich.1999). However, the State would have us hold that an asserted general propensity of narcotics violators to destroy evidence when confronted by police permits a no-knock entry. *People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706, 708 (Cal.1967).

Under the facts of this case, we cannot discern any particularity in the State's justifications for unannounced entry. In light of *Richards* and *Wilson*, we decline to permit officers to invoke the destruction of evidence exception whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction. *See Commonwealth v. Scalise*, 387 Mass. 413, 439 N.E.2d 818, 823 (Mass.1982).[7] Indeed, a finding of exigency under these circumstances would effectively sanction an unannounced entry in every drug case. *Cf. State v. Gassner*, 6 Or.App. 452, 488 P.2d 822, 827 (Or.Ct.App.1971) (finding that the application of the destruction of evidence exception would have "totally consumed" the knock-and-announce rule).

### III. SUPPRESSION AS SANCTION

■ In its third and final point, the State argues that this court erred in applying the exclusionary rule to suppress evidence where there was no causal connection between the alleged violation of the knock-and-announce rule and the acquisition of the evidence. The purpose of the exclusionary rule is to deter police misconduct by removing the incentive to disregard constitutional guarantees. *See Mapp v. Ohio*, 367 U.S. 643, 656, 81 S.Ct. 1684, 6

---

7. The State's reliance on the destruction of evidence exception seems anemic considering the short time officers must wait between the initial knock-announce and the subsequent burst through the threshold. *See State v. Williams*, 800 So.2d 819, 824 n. 2 (La.2001) (surveying the case law under the federal knock-and-announce statute and finding that while waiting less than five seconds is likely unreasonable, waiting more than five seconds is permissible). The burden to meet the knock-and-announce requirement is "certainly slight," and it can be met with but a few words from the officers. *See Miller*, 357 U.S. at 309–10, 78 S.Ct. 1190.

L.Ed.2d 1081 (1961).[8] The Supreme Court has not yet determined whether or to what extent the exclusionary rule applies in cases involving a violation of the Fourth Amendment knock-and-announce rule. *See Broussard v. State,* 68 S.W.3d 197, 199 n. 2 (Tex.App.-Houston [1 Dist.] 2002, pet. ref'd). In neither *Richards* nor *Wilson* was suppression specifically identified-or eliminated-as the appropriate remedy for a failure to comply with the knock-and-announce rule. Though dismissing the lower court's blanket exception to the rule, the *Richards* Court nevertheless affirmed, finding that officers had not violated the Fourth Amendment, making the suppression issue moot. 520 U.S. at 395–96, 117 S.Ct. 1416. The *Wilson* Court reversed and remanded, instructing that the lower court make any necessary findings of fact and to make the determination of reasonableness. 514 U.S. at 937, 115 S.Ct. 1914. Thus, we have little guidance from the Supreme Court on the issue of suppression in this context.

Because so few Texas courts have addressed this issue, and because the Texas Court of Criminal Appeals has not had the occasion to do so, we note that this is a relatively new issue in Texas constitutional criminal procedure. *But see Stokes v. State,* 978 S.W.2d 674, 676 (Tex.App.-Eastland 1998, pet. ref'd) (finding that officer's specific knowledge of narcotics and fire-

arms in the residence justified no-knock entry); *Robinett v. Carlisle,* 928 S.W.2d 623, 627 n. 5 (Tex.App.-Fort Worth 1996, writ denied). Thus, we find guidance in the decisions of other courts, most notably the Fifth Circuit. *See Valdez,* 302 F.3d at 320–21; *United States v. Cantu,* 230 F.3d 148 (5th Cir.2000). In *Valdez,* the Fifth Circuit affirmed the district court's exclusion of evidence because the officers failed to comply with the knock-and-announce common law rule. 302 F.3d at 320.[9] Two years earlier, in *Cantu,* the Fifth Circuit found the no-knock entry unreasonable under Fourth Amendment analysis after reviewing the officers' actions in light of *Richards* and *Wilson.* 230 F.3d at 151–53. The *Cantu* court reversed the district court's order denying the defendant's motion to suppress and remanded. 230 F.3d at 153. We also note that the Supreme Court has suppressed evidence obtained in violation of the federal knock-and-announce statute. *See Sabbath v. United States,* 391 U.S. 585, 586, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (holding under the federal knock-and-announce *statute* that because officers entered without knocking and announcing, the subsequent arrest was invalid and the evidence seized inadmissible). So too have lower courts suppressed evidence when officers have violated statutory knock-and-announce requirements.[10]

---

**8.** In *Stone v. Powell,* the Supreme Court retreated from the notion that the exclusionary rule is part and parcel with the Fourth Amendment. 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rather, the Court opined, the rule is a judicially crafted remedy. *Id.*

**9.** The Seventh Circuit disagrees with this approach. In *United States v. Espinoza,* it found that when a Fourth Amendment violation causes no discernable harm to the interests of an individual protected by the knock-and-announce requirement the exclusion of evidence

is a disproportionately severe and inappropriate. 256 F.3d 718, 725 (7th Cir.2001).

**10.** *See, e.g., Bates,* 84 F.3d at 795; *United States v. Moore,* 91 F.3d 96, 97–99 (10th Cir. 1996); *United States v. Marts,* 986 F.2d 1216, 1220 (8th Cir.1993); *Stewart,* 867 F.2d at 584; *Meyer v. United States,* 386 F.2d 715, 718 (9th Cir.1967); *State v. Curtis,* 964 S.W.2d 604, 611 (Tenn.Crim.App.1997); *Reynolds,* 238 So.2d at 560; *State v. Mendoza,* 104 Ariz. 395, 454 P.2d 140, 145 (Ariz.1969); *People v. Webb,* 36 Cal.App.3d 460, 111 Cal.Rptr. 524, 527 (Cal.Ct.App.1973). Indeed, our opinion

The State attempts to distinguish cases in which evidence was excluded under a statutory or state constitutional violation versus those excluded pursuant to the Fourth Amendment proper. However, as the great weight of the authority suggests suppression is an appropriate remedy for statutory violations, we too find it appropriate remedy for a constitutional violation implicating far greater personal and privacy interests.[11]

## A. Exceptions to the Exclusionary Rule

■■■ Arguing in the alternative, the State contends that if the exclusionary rule does apply in this setting then use of the evidence is rescued by one of the many exceptions. Though the State does not invoke the "inevitable discovery" or "independent source" exceptions to the exclusionary rule by name, it alludes to them with its "casual connection" argument.[12]

According to the State, the cocaine would have been acquired either way, whether the appellant had notice of the entry or not, as the warrant was its own independent source. Thus, as the State argues, the police would have lawfully entered the premises under the warrant whether or not the authorities had knocked and announced. According to this logic, the evidence would have likewise been inevitably discovered as a subsequent entry pursuant to the warrant would have superseded the no-knock entry The application of these two exceptions has provoked fierce debate in knock-and-announce cases. *See State v. Lee*, 836 S.W.2d 126, 127–29 (Tenn.Crim. App.1991) (finding the State's reliance on the inevitable discovery and independent source exceptions "misplaced" in knock-and-announce case); *People v. Tate*, 323 Ill.App.3d 905, 257 Ill.Dec. 152, 753 N.E.2d 347, 351–52 (Ill.App.Ct.2001) (declining to find the independent source and inevitable discovery rules apply to trump·the exclu-

mentioned a number of such cases supporting our holding that suppression was an appropriate remedy. *See State v. Johnson*, 168 N.J. 608, 775 A.2d 1273, 1279–82 (N.J.2001); *Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648, 655 (Ark.1999); *People v. Wright*, 183 Ill.2d 16, 231 Ill.Dec. 908, 697 N.E.2d 693, 696 (Ill.1998); *State v. Cohen*, 191 Ariz. 471, 957 P.2d 1014, 1016 (Ariz.Ct.App.1998).

**11.** Several of the cases cited were decided well before the Supreme Court's recognition of a Fourth Amendment basis for the knock-and-announce principle. Arguably, this trend supports the notion that suppression is the appropriate remedy now as courts utilized it decades before the Supreme Court's recent emphasis of the rule. *See Stevens*, 597 N.W.2d at 66 (Cavanaugh, J., dissenting).

**12.** The independent source doctrine rests upon the assumption that so long as a later, lawful seizure is genuinely independent of an earlier, tainted one, there is no reason why the independent source doctrine should not rescue the evidence. *See Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The rationale behind the

rule is the theory that the prosecution should not be put in a worse position than it would have been absent the police misconduct. *Id.* The U.S. Supreme Court recognized that the inevitable discovery exception will apply if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means. *Compare Nix v. Williams*, 467 U.S. 431, 443–44, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) *with Wilson*, 514 U.S. at 937 n. 4, 115 S.Ct. 1914 (declining to address the possible application, if any, of the independent source and inevitable discovery rules in the Fourth Amendment knock-and-announce context as the issues were not addressed by the court below and not within the narrow question upon which certiorari granted). The Court concluded that the exclusionary rule's deterrence rationale would not be offended, as an officer aware that the evidence will inevitably be discovered will try to avoid engaging in any questionable practice. *See Nix*, 467 U.S. at 445–46, 104 S.Ct. 2501 *but see State v. Daugherty*, 931 S.W.2d 268, 274 (Tex.Crim.App.1996) (finding that there is no inevitable discovery doctrine under Texas statutory exclusionary rule).

sionary rule in knock-and-announce case); *contra Stevens,* 597 N.W.2d at 62 (holding that the inevitable discovery exception should be available in knock-and-announce cases).

In making this argument, the State relies on the existence of the warrant to establish the evidence was discovered by means independent of any possible illegality. However, the very warrant the State relies on as an independent source was the warrant that was unlawfully executed. The search warrant, although legally obtained, was executed in violation of the Fourth Amendment, and its execution was directly connected to the illegal entry. *See United States v. Marts,* 986 F.2d 1216, 1220 (8th Cir.1993) ("Under [such an] application of the independent source rule, the knock-and-announce rule . . . would be meaningless since an officer could obviate illegal entry in every instance simply by looking to the information used to obtain the warrant."). The government cannot prevail on this argument, as there was no subsequent search pursuant to a valid warrant *independent* of the illegal entry. *See United States v. Dice,* 200 F.3d 978, 986 (6th Cir.2000) ("The government's argument here is no more than an attempt to circumvent this clear and binding precedent that knock-and-announce violations require suppression and that the independent source doctrine requires an independent, legal search to have taken place."). If the execution of the warrant was illegal, the State cannot invoke that very warrant as an independent source of the illegal entry. We find wisdom in the words of the *Tate* court:

> The requirement that the source be 'genuinely independent' and the product of a "later, lawful seizure" cuts against the State's argument here that the valid search warrant triggers the independent source doctrine. That the information supporting the warrant was known be-

fore the illegal entry was made is irrelevant. The State cannot escape from the record here: that the otherwise valid search warrant was executed in violation of the fourth amendment. The violation is directly connected to the illegal entry. A contrary conclusion would render the 'knock-and-announce' requirement meaningless and allow the exception to swallow the rule. Given the longstanding common-law endorsement of the practice of announcement, we conclude that independent source does not apply under these facts.

257 Ill.Dec. 152, 753 N.E.2d at 351–52.

The *Tate* court noted that this logic also defeated the government's attempt to avail itself of the inevitable discovery exception. *Id.* at 352. We agree. Thus, for the same reason, we cannot of approve of the application of the inevitable discovery exception in this context. Ours is certainly not the first inquiry to wrestle with the application of the inevitable discovery exception to violations of the knock-and-announce requirement. *See United States v. Shugart,* 889 F.Supp. 963, 978 (E.D.Tex.1995), *aff'd,* 117 F.3d 838 (5th Cir.1997); *Stevens,* 597 N.W.2d at 69–70 (Cavanaugh, J., dissenting) ("Under a rationale such as this, the evidence will always have been 'inevitably' discovered."); *see also United States v. Jones,* 149 F.3d 715, 716–17 (7th Cir.1998) ("It is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant . . ."). An application of this exception to evidence seized after a clear violation of the of the Fourth Amendment knock-and-announce requirement would "completely viscerate" the fundamental privacy and safety interests the statute seeks to secure. *Cf. Shugart,* 889 F.Supp. at 978.

Because the warrant in this case was unlawfully executed, the trial court erred in overruling appellant's objection and admitting the evidence obtained in the search. *See Dice,* 200 F.3d at 986 (wholly rejecting the government's reliance on the independent source rule in this context and its attempt to recast evidence that is in fact the direct fruit of an unconstitutional search as indirect evidence from an independent source). We cannot allow the State to avail itself of exceptions which would entirely swallow the rule. Thus, we find the independent source and inevitable discovery doctrines inapplicable under the specific facts of the present case.

### B. Other Remedies

In seeking to avoid the exclusionary rule, the State points to the efficacy of other remedies which could in its words "easily cure" any constitutional infractions. *See* 42 U.S.C. 1983 (2000); TEX. CIV. PRAC. & REM.CODE § 101.0215. Yet our courts are already awash in such lawsuits. *See, e.g., Aponte Matos v. Toledo Davila,* 135 F.3d 182 (1st Cir.1998) (finding, among other things, that officers were entitled to qualified immunity for failure to knock-and-announce in 42 U.S.C. § 1983 action). The exclusionary rule and subsequent civil rights litigation do not serve identical purposes. We cannot agree that the existence of other remedies precludes application of the exclusionary rule.

### IV. CONCLUSION

Finding no merit in the State's arguments, we overrule its motion for rehearing.