State=s Motion for Rehearing Overruled and Opinion filed November 27,
2002









State=s
Motion for Rehearing Overruled and Opinion filed November 27, 2002.

 




 
 
 
  
 
 
 




 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01028-CR

____________

 

GILBERT COLEMAN PRICE,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 228th District Court

Harris County, Texas

Trial
Court Cause No. 875,465

 



 

O
P I N I O N   O N   M O T I O N  
F O R   R E H E A R I N G








This
court reversed appellant=s conviction because the officers executing the search and
arrest warrant violated the Fourth Amendment in failing to knock and announce
their presence.  The State urges us to
reconsider our holding in its motion for rehearing.  In so doing, the State argues: (1) the
appellant failed to preserve his sole issue on appeal by properly objecting in
the trial court on the basis of the Fourth Amendment knock-and-announce rule; (2) this court erred in holding the
search violated the Supreme Court=s prohibition against blanket
no-knock searches in all felony drug cases; and (3) this court erred in
applying the exclusionary rule to suppress evidence where there was no causal
connection between the alleged violation of the knock-and-announce rule and the
acquisition of the evidence.  We overrule the State=s motion.

I. 
PRESERVATION OF ERROR

In its first ground for rehearing, the State contends the
appellant did not preserve his sole issue on appeal by failing to properly
object in the trial court on the basis of the Fourth Amendment
knock-and-announce rule.  The State did
not make this argument in its original appellate brief, and thus, we are
presented with this issue for the first time in its motion for rehearing.  If a party raises a new ground for the first
time on motion for rehearing, the decision to consider the new matter is left
to the sound discretion of the appellate court. 
Rochelle v. State, 791 S.W.2d 121, 124 (Tex.
Crim. App. 1990).

Occasionally, justice may require that an appellate court
consider a motion for rehearing to decide an issue not presented in the
original briefs.  See Hughes v. State,
878 S.W.2d 142, 151 (Tex. Crim. App. 1992).  Through such a motion, a party may object to
an appellate court=s failure to address systemic requirements on original
submission.  Id.  This mechanism maintains the essential
integrity of our system by forcing appellate courts to observe systemic
requirements.  Id.  One such requirement is the failure of an
appellate court to address the preservation or forfeiture of error.  See id.  Fulfilling this independent duty to scour the
record for waiver, we do not find appellant waived his challenge.








The State contends that appellant should not be allowed to
claim violations of the Fourth Amendment common law knock-and-announce rule on
appeal when his arguments at trial referenced only its federal statutory
counterpart.[1] 
This court has remarked that in order to preserve error, a timely and
sufficiently specific request, objection, or motion must be made to the trial
court.  Laney v. State, 76 S.W.3d
524, 527 (Tex. App.CHouston [14th Dist.] 2002, pet.
filed).  The requirement for specificity
remains even when the complaint rests on constitutional grounds.  Id. 
Thus, to adequately preserve error, appellant should have presented the
court with a motion stating the specific Fourth Amendment grounds for the
ruling soughtCsuppression of the evidence.  See Espinosa v. State, 29 S.W.3d 257,
260 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). 

At
the hearing on the motion to suppress, appellant=s counsel argued:

[I]t is agreed by the State and it=s
in the police report as well as [appellant=s] affidavit that the officers didn=t
knock.  They didn=t
announce.  They kicked the backdoor in
and came in.  That=s against federal law.  And while they=re trying to establish a blanket exception in drug cases, the
Supreme Court expressly turned that request down.  It was in 1997 where they said you can=t
do it just because there might be drugs in there.

In
his memorandum of law in support of the motion to suppress, appellant stated
that the officers executing the warrant did not comply with the knock,
announce, and wait rule set out in federal law. 
The argument for this section of the memorandum references the federal
knock-and-announce statute but also relies on Richards v. Wisconsin for
the proposition that blanket exceptions to the knock-and-announce rule in
felony drug investigations are not permissible. 
520 U.S. 385, 387B88
(1997).  Richards dealt
exclusively with the Fourth Amendment knock-and-announce requirement; it was
not decided on the basis of the federal knock-and-announce statute.  Id. 
Appellant also attached an article from the monthly publication of the
National Association of Criminal Defense Lawyers to his motion referencing the
constitutional basis for the rule.  See
Sheryl Gordon McCloud, Will State or Federal Constitutional Law Save the
>Knock,
Announce & Wait= Rule from a Drug Exception?,
The Champion, April 1997, at 12,
available on Westlaw at 21‑APR CHAMP 12.








After reviewing appellant=s
motion to suppress, the memorandum of law in support of the motion, and the
ensuing argument on its behalf, we find appellant sufficiently alerted the
trial court to the constitutional basis of his objection.

II. 
The Fourth Amendment








The State maintains this court erred in holding that the
search violated the Supreme Court=s prohibition against blanket
no-knock searches in all felony drug cases.[2]  We have already held that the Richards requirement of
particularized evidence to justify the no-knock entry defeats the State=s argument in this case. Well before Richards, lower
courts demanded specificity of law enforcement=s
professed justifications for no-knock entries. 
Rooted in these opinions is the concern that without particularity
officers can enter a private residence sans announcement with only the most vague justification.[3]  In its motion for rehearing, the State claims
that the no-knock entry in question was justified with specific evidence under
the particular circumstances of the case. 
In so doing, the State does concede that within the protection provided
by the Fourth Amendment is the common law principle that police officers must
knock-and-announce their presence before attempting a forcible entry into a
home.  See Richards, 520 U.S. at
394; Wilson v. Arkansas, 514 U.S. 927, 934 (1995);  Miller v. United States, 357 U.S. 301, 313
(1958) (noting Athe requirement of prior notice of
authority and purpose before forcing entry into a home is deeply rooted in our
heritage and should not be given grudging application.@).[4]  First, the State reasserts that the exigency
created by the likelihood that appellant was armed and dangerous justified the
no-knock entry.  We have found this
justification unpersuasive.  Second, the
State maintains that the exigency created by the likelihood that appellant
would destroy evidence permitted the unannounced entry.  The State did not place significant weight on
the destruction-of-evidence in its original appellate brief, as it based its
argument primarily upon the belief that the suspect was Aarmed
and dangerous.@ 
In its motion for rehearing, however, the State dedicates more attention
to this doctrine.

A. 
Exigency and the Safety of Officers








The first exigency offered by the State to justify the
unannounced entry is the likelihood that appellant was armed and dangerous and
thus a peril to the entering officers. 
We have already held that the mere assumption that those in possession
of controlled substances are normally also in possession of firearms is
insufficient as a matter of law to relieve the authorities of their historical
duty to knock-and-announce their presence.  Compare United States v. Valdez, 302 F.3d
320, 322 (5th Cir. 2002); United States v. Stewart, 867 F.2d
581, 582B83 (10th
Cir. 1989).[5]  We rejected the State=s
arguments to the contrary because the affidavit upon which a warrant is based
cannot be premised upon generalities and stereotypes of drug dealers in the
abstract.  Valdez, 302 F.3d at 322; Stewart, 867 F.2d at 582B83; Garza
v. State, 632 N.W.2d 633, 638B39 (Minn. 2001).  Were we to accept such a statement as a
justification for a no-knock entry, we would effectively resurrect the blanket
exception rejected by the Supreme Court in Richards.  520 U.S. at 387B88.

B. 
The Destruction of Evidence








The second exigency the State invokes to justify the
unannounced entry is the likelihood of the destruction of evidence.  We did not specifically address this issue in
our opinion.  Buttressing this argument
is the State=s observation that the type of
narcotic at issue, cocaine, is easily destroyed.[6]
 Although the experienced officer may
surmise that a party is likely to dispose of evidence when faced with the
execution of the search warrant, such suspicions do not create an exigency to
justify an unannounced entry.  See United States. v. Bates, 84 F.3d 790, 796 (6th Cir. 1996).  Here, the police officers knew only that
appellant was connected to drugs and that such persons may dispose of evidence
under specific circumstances.  To avail
themselves of this exception to the knock-and-announce rule, officers must
reasonably conclude that the resident has resolved to dispose of the evidence
in the event of police intrusion.  People v. Alaniz, 227 Cal. Rptr. 575, 577 (Cal. Ct. App.
1986); State v. Harris, 530 P.2d 646, 655 (Wash. Ct. App. 1975).  The police should have at least some specific
facts as to the case at hand that would justify their apprehension.  Cf. Berryman v. State,
368 So.2d 893, 895 (Fla. Dist. Ct. App. 1979) (interpreting state
knock-and-announce statute).  The
police did not see appellant engaged in the act of destroying evidence, nor had
they witnessed any specific acts suggesting that destruction was imminent.  Similarly, the authorities had no anecdotal
evidence that appellant had destroyed or attempted to destroy evidence upon a
previous encounter with police.  The mere
fact that drugs are involved does not give the police probable cause to believe
that evidence will be destroyed so as to justify an unannounced entry.  Reynolds v. State, 238 So.2d 557, 559B60
(Ala. Crim. App. 1970);  People v. Marinez, 513 N.E.2d 607, 609 (Ill. App. Ct.
1987).

We understand that it may at times be difficult for
police to justify an entry based on this exception.  Certainly, allowing a drug dealer a
sufficient amount of time to destroy evidence of a crime is not the purpose of
the knock-and-announce rule.  People v. Stevens, 597 N.W.2d 53,
64 (Mich. 1999). 
However, the State would have us hold that an asserted general
propensity of narcotics violators to destroy evidence when confronted by police
permits a no-knock entry.  People v.
Gastelo, 432 P.2d
706, 708 (Cal. 1967).








Under the facts of this case, we cannot discern any
particularity in the State=s justifications for unannounced
entry.  In light of Richards and Wilson,
we decline to permit officers to invoke the destruction of evidence exception
whenever the objects named in the search warrant are by their nature amenable
to ready disposal or destruction.  See Commonwealth v. Scalise, 439
N.E.2d 818, 823 (Mass. 1982).[7]  Indeed, a finding of exigency under these
circumstances would effectively sanction an unannounced entry in every drug
case..  Cf. State v. Gassner, 488 P.2d 822, 827 (Or. Ct. App. 1971)  (finding that the application of the
destruction of evidence exception would have Atotally
consumed@ the knock-and-announce rule).

III.  Suppression as Sanction

In its third and final point, the State argues that this
court erred in applying the exclusionary rule to suppress evidence where there
was no causal connection between the alleged violation of the
knock-and-announce rule and the acquisition of the evidence.  The purpose of the exclusionary rule is to
deter police misconduct by removing the incentive to disregard constitutional
guarantees.  See Mapp v. Ohio, 367
U.S. 643, 656 (1961).[8]  The Supreme Court has not yet determined
whether or to what extent the exclusionary rule applies in cases involving a
violation of the Fourth Amendment knock-and-announce rule.  See Broussard v. State, 68 S.W.3d 197, 199
n.2 (Tex. App.CHouston [1 Dist.] 2002, pet. ref=d).  In neither Richards nor Wilson was
suppression specifically identifiedCor eliminatedCas
the appropriate remedy for a failure to comply with the knock-and-announce
rule.  Though dismissing the lower court=s
blanket exception to the rule, the Richards Court nevertheless affirmed,
finding that officers had not violated the Fourth Amendment, making the
suppression issue moot.  520 U.S. at 395B96. 
The Wilson Court reversed and remanded, instructing that the
lower court make any necessary findings of fact and to make the determination
of reasonableness.  514 U.S. at 937.  Thus, we have
little guidance from the Supreme Court on the issue of suppression in this
context.








Because so few Texas courts have addressed this issue,
and because the Texas Court of Criminal Appeals has not had the occasion to do
so, we note that this is a relatively new issue in Texas constitutional
criminal procedure.  But see Stokes v. State,
978 S.W.2d 674, 676 (Tex.
App.CEastland 1998,
pet. ref=d)
(finding that officer=s specific knowledge of narcotics and firearms in the residence
justified no-knock entry); Robinett v. Carlisle, 928 S.W.2d 623, 627 n.5
(Tex. App.CFort Worth 1996, writ denied).  Thus, we find guidance in the
decisions of other courts, most notably the Fifth Circuit.  See Valdez, 302 F.3d at 320B21;
United States v. Cantu, 230 F.3d 148 (5th Cir. 2000).  In Valdez, the Fifth Circuit affirmed
the district court=s exclusion of evidence because the
officers failed to comply with the knock-and-announce common law rule.  302 F.3d at 320.[9]  Two years earlier, in Cantu, the Fifth
Circuit found the no-knock entry unreasonable under Fourth Amendment analysis
after reviewing the officers=
actions in light of Richards and Wilson.  230 F.3d 151B53. The Cantu court
reversed the district court=s order denying the defendant=s
motion to suppress and remanded.  230 F.3d at 153.  We
also note that the Supreme Court has suppressed evidence obtained in violation
of the federal knock-and-announce statute. 
See Sabbath v. United States, 391 U.S. 585, 586 (1968) (holding
under the federal knock-and-announce statute that because officers
entered without knocking and announcing, the subsequent arrest was invalid and
the evidence seized inadmissible).  So
too have lower courts suppressed evidence when officers have violated statutory
knock-and-announce requirements.[10]








The State attempts to distinguish cases in which
evidence was excluded under a statutory or state constitutional violation
versus those excluded pursuant to the Fourth Amendment proper.  However, as the great weight of the authority
suggests suppression is an appropriate remedy for statutory violations, we too
find it appropriate remedy for a constitutional violation implicating far greater
personal and privacy interests.[11]

A.  Exceptions to the Exclusionary Rule








Arguing in the alternative, the State contends that if
the exclusionary rule does apply in this setting then use of the evidence is
rescued by one of the many exceptions. 
Though the State does not invoke the Ainevitable
discovery@ or Aindependent
source@ exceptions to the exclusionary
rule by name, it alludes to them with its Acasual connection@
argument.[12]  According to the State, the cocaine would
have been acquired either way, whether the appellant had notice of the entry or
not, as the warrant was its own independent source. Thus, as the State argues,
the police would have lawfully entered the premises under the warrant whether
or not the authorities had knocked and announced.  According to this logic, the evidence would
have likewise been inevitably discovered as a subsequent entry pursuant to the
warrant would have superseded the no-knock entry  The application of these two
exceptions has provoked fierce debate in knock-and-announce cases.  See State v. Lee, 836 S.W.2d 126, 127B29
(Tenn. Crim. App. 1991) (finding the State=s reliance on the inevitable
discovery and independent source exceptions Amisplaced@
in knock-and-announce case); People v. Tate, 753 N.E.2d 347, 351B52
(Ill. App. Ct. 2001) (declining to find the independent source and inevitable
discovery rules apply to trump the exclusionary rule in knock-and-announce
case); contra Stevens, 597 N.W.2d at 62 (holding that the inevitable discovery
exception should be available in knock-and-announce cases).

In making this argument, the State relies on the
existence of the warrant to establish the evidence was discovered by means
independent of any possible illegality. 
However, the very warrant the State relies on as an independent source
was the warrant that was unlawfully executed.  The search warrant, although legally obtained,
was executed in violation of the Fourth Amendment, and its execution was
directly connected to the illegal entry. 
See United
States v. Marts, 986
F.2d 1216, 1220 (8th Cir. 1993)
(AUnder
[such an] application of the independent source rule, the knock-and-announce
rule . . . would be meaningless since an officer could obviate illegal entry in
every instance simply by looking to the information used to obtain the warrant.@).  The government cannot prevail on this
argument, as there was no subsequent search pursuant to a valid warrant independent
of the illegal entry.  See Dice v.
United States, 200 F.3d 978, 986 (6th Cir. 2000) (AThe
government=s argument here is no more than an
attempt to circumvent this clear and binding precedent that knock‑and‑announce
violations require suppression and that the independent source doctrine
requires an independent, legal search to have taken place.@).
 If the execution of the warrant
was illegal, the State cannot invoke that very warrant as an independent source
of the illegal entry.  We find wisdom in
the words of the Tate court:








The requirement that the source be
>genuinely
independent=
and the product of a Alater, lawful seizure@ cuts against the State=s argument here that the valid search warrant triggers
the independent source doctrine.  That
the information supporting the warrant was known before the illegal entry was
made is irrelevant.  The State cannot escape
from the record here: that the otherwise valid search warrant was executed in
violation of the fourth amendment.  The
violation is directly connected to the illegal entry.  A contrary conclusion would render the >knock-and-announce= requirement meaningless and allow the exception to
swallow the rule.  Given the longstanding
common‑law endorsement of the practice of announcement, we conclude that
independent source does not apply under these facts.

 

753 N.E.2d at 351B52. 


The Tate court noted that this logic also
defeated the government=s attempt to avail itself of the
inevitable discovery exception.  Id. at 352.  We
agree.  Thus, for the same reason, we
cannot of approve of the application of the inevitable
discovery exception in this context.  Ours is certainly not the first
inquiry to wrestle with the application of the inevitable discovery exception
to violations of the knock-and-announce requirement.  See United States v. Shugart, 889 F.
Supp. 963, 978 (E.D.Tex. 1995), aff=d, 117 F.3d 838 (5th Cir. 1997); Stevens, 597
N.W.2d at 69B70 (Cavanaugh, J., dissenting) (AUnder a rationale such as this, the
evidence will always have been >inevitably= discovered.@);  see also United
States v. Jones, 149 F.3d 715, 716B17 (7th Cir.1998) (AIt is hard to understand how the
discovery of evidence inside a house could be anything but >inevitable= once the police arrive with a
warrant . . .@). 
An application of this exception to evidence seized after a clear
violation of the of the Fourth Amendment
knock-and-announce requirement would Acompletely viscerate@ the fundamental privacy and safety
interests the statute seeks to secure.  Cf. Shugart, 889 F. Supp. at 978.

Because the warrant in this case was unlawfully
executed, the trial court erred in overruling appellant=s
objection and admitting the evidence obtained in the search.  See Dice, 200 F.3d at 986 (wholly
rejecting the government=s reliance on the independent
source rule in this context and its attempt to recast evidence that is in fact
the direct fruit of an unconstitutional search as indirect evidence from an
independent source).  We cannot allow the
State to avail itself of exceptions which would entirely swallow the rule.  Thus, we find the independent source and
inevitable discovery doctrines inapplicable under the specific facts of the
present case.








B.  Other Remedies

In seeking to avoid the exclusionary rule, the State
points to the efficacy of other remedies which could in its words Aeasily
cure@ any constitutional
infractions.  See 42 U.S.C. 1983
(2000); Tex. Civ. Prac. & Rem. Code '
101.0215.  Yet our courts are already
awash in such lawsuits.  See, e.g.,
Aponte Matos v. Toledo Davila, 135 F.3d 182 (1st Cir. 1998) (finding, among
other things, that officers were entitled to qualified immunity for failure to
knock-and-announce in 42 U.S.C. ' 1983 action).  The exclusionary rule and subsequent civil
rights litigation do not serve identical purposes.  We cannot agree that the existence of other
remedies precludes application of the exclusionary rule.

IV. 
Conclusion

Finding
no merit in the State=s arguments, we overrule its motion for rehearing.

 

 

 

 

/s/        Eva
M. Guzman

Justice

 

Judgment rendered and Opinion Motion for Rehearing
filed November 27, 2002.

Panel consists of Justices Yates, Seymore,
and Guzman.

Publish C Tex. R.
App. P. 47.3(b).

 

 











[1]  The federal
knock and announce statute regulates only the conduct of federal officers.  United States v. Gatewood, 60 F.3d
248, 249 (6th Cir. 1995) (finding that the federal knock and announce statue
has no application when state officers, acting totally without federal
involvement, seize evidence that is later offered in a federal prosecution);  United
States v. Heacock, 31 F.3d 249, 258 (5th Cir. 1994) (noting that the
federal knock and announce statute has no application to a state search).





[2]  In analyzing
this issue, as well as the issue of suppression as the appropriate remedy, we
find guidance in the opinions of courts reviewing purported violations of the
Fourth Amendment as well as the federal and various state knock-and-announce
statutes.





[3]  Over the
years, other courts have stated this particularity requirement in different
ways.  As the California Supreme Court
observed:

 

Under the Fourth Amendment, a specific showing must
always be made to justify any kind of police action tending to disturb the
security of the people in their homes. 
Unannounced forcible entry is in itself a serious disturbance of that
security and cannot be justified on a blanket basis.  Otherwise the constitutional test of
reasonableness would turn only on practical expediency, and the amendment=s primary safeguard C the
requirement of particularity C would be lost. 
Just as the police must have sufficiently particular reason to enter at
all, so must they have some particular reason to enter in the manner chosen.

 

People v. Gastelo, 432 P.2d 706, 708 (Cal. 1967).  The Sixth
Circuit has concluded that law enforcement cannot justify a no-knock entry
based upon Aa mere hunch or suspicion.@  See United
States. v. Bates, 84 F.3d 790, 795 (6th Cir. 1996).  According to the Tenth Circuit, the officers= decision to enter without announcement cannot be
based upon generalities bearing no relation to the particular premises being
searched or the particular circumstances surrounding the search.  See United States v. Stewart, 867 F.2d 581, 585 (10th Cir. 1989).  As the Ninth Circuit has observed, exigent
circumstances may not be found if  predicated upon general fears of the
officers executing the search warrant.  See
United States v. Becker, 23 F.3d 1537, 1541 (9th
Cir. 1994).





[4]  In Wilson,
Justice Thomas traced the knock-and-announce principle from its origins in
thirteenth-century England to its early widespread acceptance in the United
States.  514 U.S. at
931B34.  Surveying the history of the common law
principle, Justice Thomas invoked the often-quoted Semayne=s Case,
which set forth the following principle:

 

[T]he sheriff (if the doors be not open) may break the
party=s house, either to arrest him, or to do other
execution of the King=s process, if otherwise he cannot enter.  But before he breaks it, he ought to signify
the cause of his coming, and to make request to open the doors.

 

5 Co. Rep. 91a, 91b, 77 Eng. Rep.
194, 195 (K.B. 1603).  For an extraordinarily thorough review of the
evolution of the knock-and-announce rule at common law, see Commonwealth v.
Cundriff, 415 N.E.2d 172, 174B78
(Mass. 1980); see also State v. Mooring, 20 S.E. 182, 182 (N.C. 1894)
(noting the Awell settled@ rule
that an officer may open the doors of a home after Ademand of admittance@); State
v. Smith, 1 N.H. 346, 346 (N.H. 1818) (AFor when
a felony has been committed, or dangerous wound given, or even where a minister
of justice comes armed with process founded on a breach of the peace, the party=s own house is no sanctuary for him; but the doors may
be forced after the notification, demand and refusal, after mentioned.@)





[5]  Though we
cannot justify the use of stereotypes and stress the importance of the
particularities of exigency, we do acknowledge the great difficulties in
confronting dealers of narcotics in their homes.  See United States. v. Bonner, 874 F.2d
822, 824 (C.A.D.C. 1989) (AAs common sense, and bitter experience, would suggest,
the law has uniformly recognized that substantial dealers in narcotics possess
firearms and that such weapons are as much tools of the trade as more commonly
recognized drug paraphernalia.@) (quotations omitted). 





[6]  Courts are
often confronted with this argument.  Compare State v. Gassner, 488 P.2d
822, 828 (Or. Ct. App. 1971) (suggesting that an Aeasily disposable amount of narcotics@ may meet minimum showing necessary to invoke the
destruction‑of‑the‑evidence exception) with People v.
Marinez, 513 N.E.2d 607, 609 (Ill. App. Ct. 1987) (AThe mere fact that narcotics, which by their very
nature are easily destroyed does not in and of itself create an >exigent circumstance= which
would justify the police in failing to knock-and-announce.@) and State v. Carufel, 314 A.2d 144, 148 (R.I.
1974) (finding the presence of easily disposable drugs does not alone justify
an unannounced entry).





[7]  The State=s reliance on the destruction of evidence exception
seems anemic considering the short time officers must wait between the initial
knock-announce and the subsequent burst through the threshold.  See State v. Williams, 800 So.2d 819,
824 n.2 (La. 2001) (surveying the case law under the federal knock-and-announce
statute and finding that while waiting less than five seconds is likely
unreasonable, waiting more than five seconds is permissible).  The burden to meet the knock-and-announce
requirement is Acertainly slight,@ and it
can be met with but a few words from the officers.  See Miller, 357 U.S. at 309B10.





[8]  In Stone v.
Powell, the Supreme Court retreated from the notion that the exclusionary
rule is part and parcel with the Fourth Amendment.  428 U.S. 465, 482 (1976).  Rather, the Court opined, the rule is a
judicially crafted remedy.  Id.





[9]  The Seventh
Circuit disagrees with this approach.  In
United States v. Espinoza, it found that when a Fourth Amendment
violation causes no discernable harm to the interests
of an individual protected by the knock-and-announce requirement the exclusion
of evidence is a disproportionately severe and inappropriate.  256 F.3d 718, 725 (7th Cir.
2001).





[10]  See, e.g.,
Bates, 84 F.3d at 795; United States v. Moore, 91 F.3d 96, 97B99 (10th Cir. 1996); United States v. Marts,
986 F.2d 1216, 1220 (8th Cir 1993); Stewart, 867 F.2d at 584; Meyer
v. United States, 386 F.2d 715, 718 (9th Cir. 1967); State v. Curtis,
964 S.W.2d 604, 611 (Tenn. Crim. App. 1997); Reynolds, 238 So.2d at 560;
State v. Mendoza, 454 P.2d 140, 145 (Ariz. 1969); People v. Webb,
111 Cal. Rptr. 524, 527 (Cal. Ct. App. 1973). 
Indeed, our opinion mentioned a number of such cases supporting our
holding that suppression was an appropriate remedy.  See State v. Johnson,
775 A.2d 1273, 1279B82 (N.J.
2001); Mazepink v. State, 987 S.W.2d 648, 655 (Ark. 1999); People v.
Wright, 697 N.E.2d 693, 696 (Ill. 1998); State v. Cohen, 957 P.2d
1014, 1016 (Ariz. Ct. App. 1998).





[11]  Several of the
cases cited were decided well before the Supreme Court=s recognition of a Fourth Amendment basis for the
knock-and-announce principle.  Arguably,
this trend supports the notion that suppression is the appropriate remedy now
as courts utilized it decades before the Supreme Court=s recent emphasis of the rule.  See Stevens, 597
N.W.2d at 66 (Cavanaugh, J., dissenting).





[12]  The
independent source doctrine rests upon the assumption that so long as a later,
lawful seizure is genuinely independent of an earlier, tainted one, there is no
reason why the independent source doctrine should not rescue the evidence.  See Murray v. United States, 487 U.S.
533, 542 (1988).  The rationale behind
the rule is the theory that the prosecution should not be put in a worse
position than it would have been absent the police misconduct.  Id. 
The U.S. Supreme Court recognized that the inevitable discovery
exception will apply if the prosecution can establish by a preponderance of the
evidence that the information ultimately or inevitably would have been
discovered by lawful means.  Compare
Nix v. Williams, 467 U.S. 431, 443B44
(1984) with Wilson, 514 U.S. at 937 n.4 (declining to address the
possible application, if any, of the independent source and inevitable
discovery rules in the Fourth Amendment knock-and-announce context as the
issues were not addressed by the court below and not within the narrow question
upon which certiorari granted).  The
Court concluded that the exclusionary rule=s
deterrence rationale would not be offended, as an officer aware that the
evidence will inevitably be discovered will try to avoid engaging in  any questionable practice. 
See Nix, 467 U.S. at 445B46 but see State v. Daugherty, 931
S.W.2d 268, 274 (Tex. Crim. App.1996) (finding that there is no inevitable
discovery doctrine under Texas statutory exclusionary rule).