THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JIMMY MARINEZ *et al.*, Defendants-Appellees.

Third District   No. 3—87—0005

Opinion filed September 15, 1987.

Edward F. Masters, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph C. Polito, of Kozlowski, Polito & Freeley, of Joliet, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Defendants Jimmy and Maria Marinez were charged with possession of a controlled substance with the intent to deliver. Prior to trial, the defendants filed a motion to quash the search warrant and to suppress the evidence based upon the constitutionally impermissible procedure employed by the police in executing the warrant. The defendants claim that the officers failed to knock on the door and announce their authority and the reasons for their presence prior to the execution of the warrant. The trial court granted the motion and the State filed a timely notice of appeal.

Prior to the search of the Marinez residence, agents of the Metropolitan Area Narcotics Squad (MANS) obtained a search warrant. The warrant did not list the Marinez family as the people who were the subject of the search. The name on the warrant as the occupant of the premises was Eddie Rodriguez. The agents believed Rodriguez was the occupant of 207 E. Clinton as a result of surveillance conducted during the investigation. A controlled buy of cocaine was conducted and the police tailed the purchaser to 207 E. Clinton. Numerous vehicles were present at the address. A check of the license plates revealed the owner of one of the vehicles to be Rodriguez, a good friend of the defendants'. Rodriguez' license check showed a Sterling Avenue address, but the MANS agents knew Rodriguez no longer lived at this address. It was on this basis that police believed Rodriguez to be the occupant of 207 E. Clinton.

The MANS agents knew Rodriguez to possess firearms. In a search conducted in 1985 of Rodriguez' old address, numerous loaded handguns were seized, along with a quantity of cocaine and cannabis.

Police also had information that an "Uzi"-type machine pistol and a nine-millimeter handgun were located at the residence. On the basis of the controlled buy and this other information, MANS agents obtained the warrant.

On September 16, 1986, prior to the time MANS agents executed the warrant, the Marinezes were at home with Jimmy's parents and their two children. One other person had visited the home that night. When the visitor left, Jimmy's mother testified that she had closed the back door but not locked it. Her testimony was that she closed the door until it "clicked" shut.

When the police arrived to execute the warrant, they went around to the back door of the residence. The agents' testimony indicated that as they ascended the stairs to the back door they yelled "Police officers, search warrant" numerous times. The first agent to reach the door stated that he had his flashlight in one hand and a service revolver in the other. The glass in the back door was either translucent or opaque in nature, so that anyone on the outside could not see into the residence. As one of the agents knocked on the door with the flashlight, the door began to open, a little further with each knock. The blows were of sufficient force to leave three one-inch indentations in the door but no damage was done to the lock mechanism. When the agent discerned that no one was opening the door and that it was the knocks with the flashlight that caused the opening, the agents entered the house and conducted their search while the residents were instructed to lie on the floor. The search netted a nine-millimeter handgun, found in a kitchen cabinet, and a certain quantity of a controlled substance.

The residents of the house said that they heard nothing prior to the back door's slamming open and the agents entering. The agents were all wearing blue jackets with the words "MANS Police" in four-inch-high white letters. While Jimmy's mother clearly remembered closing the door until it "clicked" shut, she stated she did not hear the agents yelling "Police officers, search warrant," nor did she recall seeing the white lettering on the blue jackets.

At this juncture, we note that the sufficiency of the probable cause to obtain and the issuance of the warrant itself were not contested. Rather, this case centers on the execution of that warrant. Specifically and initially, we address the "knock and announce" rule when placed in the equation of what constitutes a reasonable search. Second, and on the basis of the trial court's holding that the agents did "knock and announce," we must determine whether, under the facts of this case, an announcement by the agents of their identity

and purpose coupled with a simultaneous or contemporaneous entry circumvents the purpose of the "knock and announce" rule.

■ ■ The purpose of the "knock and announce" rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 518, 401 N.E.2d 507, 510.) Illinois has no statutory requirement that an officer must announce his authority and purpose. The Illinois Supreme Court has stated that "the mere failure of police to announce their authority and purpose does not *per se* violate the Constitution, [although] it may influence whether subsequent entry to arrest or search is constitutionally reasonable." (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067, 1072.) Where exigent circumstances exist, the failure of police to knock and to announce their authority and purpose in the execution of a search warrant does not violate the fourth amendment right against unreasonable searches and seizures. *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.

However, the specifics needed to find that exigent circumstances exist, thereby alleviating the need for the police to knock and announce, must have some basis in the facts of the particular case. For example, the mere fact that narcotics, which by their very nature are easily destroyed, are the subject of the search does not in and of itself create an "exigent circumstance" which would justify the police in failing to knock and announce. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.) In *Ouellette*, the Illinois Supreme Court held that the existence of narcotics located on a dresser near but outside the bathroom (where the narcotics could easily be flushed down the toilet), coupled with the fact that the defendant never permitted anyone who came to the door to enter until fully identified, did not present the necessary exigency. 78 Ill. 2d 511, 401 N.E.2d 507; see also *People v. Clark* (1986), 144 Ill. App. 3d 7, 494 N.E.2d 166.

Nor does information indicating the presence of weapons alone create an "exigent circumstance." The theory behind announcement of purpose and authority encompasses protection of the police officer as well as avoidance of confrontation generally. Although each situation merits individual analysis, the necessity that police provide notice of their presence seems more compelling in the face of startling someone in possession of a weapon. In such a case, compliance with the "knock and announce" rule should be excused "only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements." *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507 quoting *People v. Dumas* (1973), 9 Cal.

3d 871, 878, 512 P.2d 1208, 1213, 109 Cal. Rptr. 304, 309.

■■ We have determined that the trial court was correct in its determination that the information accumulated by the MANS agents was insufficient to supply the requisite exigent circumstances which would permit them to dispense with the "knock and announce" rule. There was no specific information that the narcotics were kept in a place which would facilitate their immediate destruction. Nor was there any information to suggest that the occupant carried the weapon on or about his person, that he had ever used the gun, or that there was any danger to the agents from the use of the weapon. On this basis, there was no reason to excuse the agents from failing to knock and announce their presence and intent.

■■ We next address the issue which is fact specific to this particular case. Assuming that the agents did knock and announce their presence and intent, did the simultaneous entry render a reasonable search—made so by a valid search warrant and a knock and announce—unreasonable? This question can be answered simply by examining the purpose of knocking and announcing.

As we have stated previously, one of the purposes of the "knock and announce" rule is to give the defendant time to respond to the presence of the police. If the entry into the dwelling is simultaneous with the knock and announce, that purpose is thwarted. Therefore, if the necessary exigent circumstances are absent and the police knock and announce their presence and intent, they must, in turn, give the occupants of the dwelling time to respond. To hold otherwise would effectively eliminate the need to ever consider the "knock and announce" rule.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and WOMBACHER, J., concur.