**STATE of Tennessee, Appellant,**

**v.**

**Judone A. LEE, Joyce A. Lee, Angelia D. Lee, and William H. McKissack, Jr., Appellees.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 13, 1991.

Charles W. Burson, Atty. Gen. & Reporter, Merrilyn Feirman, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Dist. Atty. Gen. and Eric L. Davis, Asst. Dist. Atty. Gen., Franklin, for appellant.

Robert L. Smith, Nashville, for Judone A. Lee.

Virginia A. Story, Franklin, for Joyce A. Lee, Angelia D. Lee, and William H. McKissack, Jr.

## OPINION

JONES, Judge.

The State of Tennessee appeals as of right from a judgment of the trial court suppressing evidence seized under color of a search warrant. Tenn.R.App.P. 3(c)(1); *State v. Reed*, 634 S.W.2d 665 (Tenn.Crim. App.1982). The trial court ruled that the officers violated Rule 41(e), Tenn.R.Crim. P., in executing the search warrant. The Court found that the entry of the officers through the front door was "marginally legal," but that kicking open the rear door so that officers could enter violated the letter and the spirit of the rule.

The State raises one issue for our review. It contends: "The trial court erred in suppressing evidence seized by officers who lawfully gained entry to the premises and were in possession of a valid search warrant." The State relies upon the doctrine of inevitable discovery to support its position that the evidence seized under color of the search warrant is admissible.

The judgment of the trial court is affirmed.

### I.

On the evening of February 15, 1990, Detective Fred Boone obtained a search warrant authorizing the search of the property municipally known as 211 Reddick Court, Franklin, Tennessee. Boone subsequently met with six other officers to plan the execution of the warrant. It was agreed that officers would go to the front door and the back door. When an officer at the front door yelled "search warrant, police," the officers were to simultaneously obtain entry by forcing open the two doors.

When the officers arrived to execute the search warrant, four officers went to the front door of the residence and three officers went to the back door. The officers had walkie talkies so that they could communicate. As the officers were approaching the front, two males exited through the front door. The officer closest to the residence told the two males that he was a police officer; and he advised them to go back into the residence. When he reached the front door, the officer announced "police department, search warrant" and immediately entered the residence behind the two males. The wooden door was open, but the storm door was closed when the officer entered the residence. He immediately secured the bathroom to prevent the destruction of property. The remaining officers assigned to the front of the residence entered the residence through the front door.

When the officers assigned to the back door heard the officer yell "police department, search warrant" at the front door, one of the officers yelled "search warrant, police" and immediately began kicking the back door to gain entry. The door was made of steel and had a deadbolt lock. On approximately the tenth try the officers successfully kicked open the back door and entered the residence. The officers entering through the front door made no effort to open the back door for the officers.

The officers at the back door said they heard "numerous screams" after the officer at the front door announced he was a police officer and he was there to conduct a search pursuant to a warrant. Once these officers announced their authority and purpose and began kicking the back door, they did not hear anything else. As one officer testified:

> At that point there was numerous screams. After the officers yelled, there were numerous screams. At that point, when I also yelled, I created a lot of noise myself. So after that point I could

not tell you what was actually going on inside the building until after I gained entry.

The occupants of the residence testified that they did not hear anyone say "police, search warrant" at either door. The first officer to enter the residence stated that he did not hear the officers at the back door make any statement except that they "had a hard time getting in it [the back door]."

## II.

█ Before an officer may make a forced entry into an occupied residence, the officer must give "notice of his authority and purpose." Tenn.R.Crim.P. 41(e); *State v. Fletcher*, 789 S.W.2d 565, 566 (Tenn. Crim.App.1990). This requirement mandates that officers (a) identify themselves as law enforcement officials and (b) explain the purpose of their presence, i.e. the execution of a search warrant. W. LaFave, *Search and Seizure*, § 4.8(c), (2nd ed. 1987), pp. 277–278. If the officer is not admitted to the residence after giving proper notice, the officer is authorized to "break open any door or window ..., or any part thereof, ... to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property." Tenn.R.Crim.P. 41(e).

█ Absent exigent circumstances,[1] officers must "wait a reasonable period of time before [they] may break and enter into the premises to be searched."[2] *State v. Carufel*, 112 R.I. 664, 314 A.2d 144, 146 (1974). The occupant of the residence "must be given a reasonable opportunity to surrender his privacy voluntarily." W. LaFave, *Search and Seizure*, § 4.8(c), (2nd ed. 1987) p. 278. *See People v. Marinez*, 160 Ill.App.3d 349, 112 Ill.Dec. 193, 196, 513 N.E.2d 607, 610 (1987), *cert. denied*, 488 U.S. 868, 109 S.Ct. 175, 102 L.Ed.2d 144 (1988) (officer must "give the occupants of the dwelling time to respond"); *People v. Abdon*, 30 Cal.App.3d 972, 106 Cal.Rptr.

879, 881 (1972); *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971). Consequently, officers may not force entry into an occupied residence simultaneously with the giving of notice. *People v. Marinez*, 112 Ill.Dec. at 196, 513 N.E.2d at 610 (announcement and forced entry simultaneous); *State v. LaPonsie*, 136 Ariz. 73, 74–75, 664 P.2d 223, 224–225 (1982) (announcement and forced entry virtually simultaneous); *State v. Defiore*, 64 Ohio App.2d 115, 411 N.Ed.2d 837, 839 (1979) (announcement and forced entry before officer was actually or constructively denied entrance); *State v. Lowrie*, 12 Wash.App. 155, 528 P.2d 1010, 1012 (1974) (announcement while attempting to force entry insufficient); *People v. Benjamin*, 71 Cal.2d 296, 455 P.2d 438, 78 Cal.Rptr. 510, (1969) (announcement and forced entry simultaneous).

The purpose of the "knock and announce" rule is threefold. In the case of *United States v. Moreno* the court said:

First, it provides protection from violence, assuring the safety and security of both the occupants and the entering officers.... Second, it protects 'the precious interest of privacy summed up in the ancient adage that a man's house is his castle'.... Finally, it protects against the needless destruction of private property.

701 F.2d 815, 817 (9th Cir.1983) (citations omitted), vacated, 469 U.S. 913, 105 S.Ct. 286, 83 L.Ed.2d 223 (1984). *See Sabbath v. United States*, 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 833 (1968) ("to safeguard officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there"); *Miller v. United States*, 357 U.S. 301, 306–307, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332, 1337 (1958) (protect privacy of occupant); *State v. Marinez*, 112 Ill.Dec. at 195, 513 N.E.2d at 609 ("notify the person inside [of the residence] of the presence of police and of the impending intrusion, give that

---

1. *Keith v. State*, 542 S.W.2d 839, 841 (Tenn. Crim.App.1976). *See State v. Fletcher*, 789 S.W.2d at 566; *State v. Starks*, 658 S.W.2d 544, 546–547 (Tenn.Crim.App.1983).

2. If there are exigent circumstances, officers do not have to wait before making a forced entry into the residence. *Keith v. State*, 542 S.W.2d at 841. *See State v. Fletcher*, 789 S.W.2d at 566; *State v. Starks*, 658 S.W.2d at 546–547.

♦

person time to respond, avoid violence, and protect privacy as much as possible"); *Commonwealth v. McDonnell*, 512 Pa. 172, 516 A.2d 329 (1986) (prevent resistance to lawful authority by an occupant protecting his residence against unauthorized entry by unknown persons).

In the case *sub judice* the entry through the front door and the back door were simultaneous with the announcement. The occupants of the residence were not given an opportunity to respond to the announcement before the officers entered.

The officers admitted that the plan was to give the requisite notice and immediately obtain entry by force through both doors. The record fully supports the trial court's finding that the officers' forced entry through the back door violated Rule 41(e), Tenn.R.Crim.P. *See State v. Fletcher, supra.* As the trial court noted during the suppression hearing, an officer at the back door literally had his foot lifted for the purpose of kicking the back door open when the signal was given.

The officers did not have to destroy the front door to gain entry. The storm door was closed, but it was not locked. The wooden door was open. However, this fact, standing alone, did not justify the officers' simultaneous announcement and entry into the dwelling. *See Sabbath v. United States*, 391 U.S. at 590, 88 S.Ct. at 1758–1759, 20 L.Ed.2d at 834; *People v. Marinez, supra; Nank v. State*, 406 So.2d 1282, (Fla.Dist.Ct.App.1981).

The State contends that the existence of exigent circumstances, i.e., two young men entering the dwelling in front of the officers, justified the immediate entry of the officers through the front door.

As previously stated, Officer Smith ordered the two males on the front porch to reenter the residence; and he used these artificially created exigent circumstances to justify his immediate entry into the dwelling. Smith stated he identified himself and advised the occupants of his purpose as he was walking through the door jamb. He immediately went to the bathroom to prevent the destruction of contraband.

A police officer cannot justify his simultaneous announcement and forced entry into a residence based upon exigent circumstances that he created. Such conduct violates the letter and spirit of Rule 41(e). If such conduct prevailed, officers could justify their simultaneous announcement and forced entry in practically every instance where a seizure is made under color of a search warrant.

This Court echoes the sentiments expressed by the United States Supreme Court in *Miller v. United States:*

> We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application.... Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house....

357 U.S. at 313, 78 S.Ct. at 1197–1198, 2 L.Ed.2d at 1340.

The trial court properly suppressed the evidence seized by the officers under color of the search warrant. This Court has held that the proper remedy for a violation of Rule 41(e), Tenn.R.Crim.P., is to suppress the evidence seized under color of the search warrant. *State v. Fletcher,* 789 S.W.2d at 566.

The State's reliance upon the inevitable discovery rule to circumvent the suppression of the evidence seized is misplaced. This is especially true in view of this

Court's holding regarding the previous issue. This Court cannot envision how evidence contained in a private residence can be discovered without benefit of a properly executed search warrant.

This issue is without merit.

DWYER and SCOTT, JJ., concur.