IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 15, 2002 Session

## STATE OF TENNESSEE v. JAMES LEE IVORY AND JERMAINE ANTONIO IVORY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2781     Steve Dozier, Judge**

**No. M2000-02145-CCA-R3-CD - Filed January 10, 2003**

Jermaine Antonio and James Lee Ivory, along with their relative David, faced numerous weapons and narcotics offenses arising out of Davidson County on various dates. After the trial court severed five counts from one of the indictments, a jury trial was conducted to determine whether: 1) Jermaine Ivory sold .5 grams or more of a substance containing cocaine on March 16, 1998; 2) Jermaine Ivory sold 26 grams or more of a substance containing cocaine on March 30, 1998; and 3) Jermaine, James, and David Ivory conspired to sell 26 grams or more of a substance containing cocaine between March 1st and April 30th of 1998. Upon hearing the proof, the jury convicted Jermaine and James Ivory as charged but acquitted David Ivory. Additionally, James Ivory later pled guilty to two counts from the above-referenced indictment and two from another. In doing so, this defendant acknowledged his guilt on two counts of possession with intent to sell over one half ounce (14.175 grams) of marijuana, one count of felony possession of a firearm,[1] and one count of possession with intent to sell over .5 grams of cocaine. Following separate sentencing hearings, Jermaine Ivory received an effective sentence of thirty-six years while James Ivory received an effective sentence of twenty years. Both individuals were also found to be multiple offenders. Thereafter, Jermaine Ivory unsuccessfully moved for a new trial; however, James Ivory filed no new trial motion. Both now bring this appeal essentially raising the same issues: (1) whether the State presented sufficient evidence to support the aforementioned conspiracy convictions; (2) whether the trial court erred in refusing to suppress evidence; and (3) whether the trial court imposed excessive sentences. After reviewing the record and applicable authorities, we find that the judgment of the trial court must be affirmed.

---

[1] Though the guilty plea form indicates that this defendant pled guilty to "Ct. 5: poss[.] firearm by convicted felon [-] a class E felony," count 6 uses this type of language while count 5 actually charges the defendant with possessing "divers firearms, with the intent to employ them in the commission of or escape from an offense." The confusion continued in the sentencing hearing as the trial court referenced this offense as "a convicted felon in possession of a firearm" but proceeded to sentence this defendant on count 5 rather than count 6. Nevertheless, both of these offenses arise from Tennessee Code Annotated section 39-17-1307. See Tenn Code Ann. § 39-17-1307. Furthermore, both are E felonies carrying the same punishments. Id.; Tenn. Code Ann. § 40-35-112.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Clark Lee Shaw, Nashville, Tennessee for the appellants, James Ivory and Jermaine Ivory.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General, Victor S. Johnson, District Attorney General; and Derrick Scretchen, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

### Factual Background

After being arrested in an unrelated drug case, Jerry Woodland agreed to become a confidential informant working with the authorities making controlled purchases of narcotics. On March 16th and 30th of 1998, Woodland made buys at 2207 Fourteenth Avenue, North. Immediately prior to both buys, Woodland met with Officer Aaron Thomas, who searched Woodland and the vehicle Woodland was driving, gave Woodland the money to make the anticipated purchase, and wired Woodland with a transmitting device. Thomas then followed Woodland to the aforementioned address and observed him entering the residence. Though Thomas recounted that the area afforded no inconspicuous place to park for observation during the buys, the officer listened to what transpired inside the house by means of the transmitter and continued driving through the residential neighborhood on these occasions. After the purchases were completed, Woodland again met the officer at an agreed upon location where Woodland surrendered the substances purchased along with the recorder and transmitter. In addition, the officer searched both Woodland and the vehicle used by Woodland. Field testing indicated that the substances obtained in these buys contained cocaine. Further tests conducted at the Tennessee Bureau of Investigation's crime laboratory revealed that the two items constituted 21.4 grams and 26.2 grams of a substance containing cocaine.

Following these purchases, Officer Thomas obtained a search warrant involving 2207 Fourteenth Avenue, North. This warrant was executed on April 6, 1998. As a result of the search, the authorities recovered three 12 gauge shotguns, three handguns, and an SKS assault rifle from various bedrooms in the residence; approximately $14,500 dollars from a safe, a cigar box, and two drawers; and a police scanner from the same bedroom in which the safe had been recovered. In addition, the police seized latex gloves, which Thomas explained are often used to prevent cocaine from being absorbed into the skin when handled; hemostats such as are commonly used in smoking marijuana; a pipe like those typically used to smoke crack cocaine; baking soda, which the informant detailed was used in making crack cocaine; photographs depicting one or more of the defendants; a photograph of James Ivory holding a sum of money; two Nashville Electric Service (NES) bills for the address searched bearing Jermaine Ivory's name; sets of scales like those used to measure out quantities of drugs for sale; etc. While testifying, Thomas noted that one of the sets of scales had

white powder residue on it when seized. During its case in chief, the State also presented proof regarding the individuals present and actions taken by them during the buys.[2]

Of the three defendants only Jermaine Ivory called witnesses to testify on his behalf. First Timothy "TimTim" Harlan attempted to establish that the gloves, scales, weapons, etc. recovered had not belonged to Jermaine; that this defendant had not even been present at the residence when the sales were made; and that an individual named Patrick Cosby had been the person from whom the informant had purchased narcotics. On cross-examination, Harlan denied speaking with Officer Thomas about providing information related to this drug enterprise in exchange for leniency on a theft case that Harlan had pending at the time. In addition to Harlan, Jermaine Ivory's girlfriend, Tanya Hughes, testified that she had listened multiple times to the audio-tape of the drug transactions. According to this witness she could tell from the conversations that drugs were being purchased. Nevertheless, while she stated that she had frequently heard Patrick "Strick" Cosby's voice on the recording, she alleged that she could not hear Jermaine Ivory's at any point. Hughes also sought to establish that Jermaine Ivory neither lived at nor frequented 2207 Fourteenth Avenue, North. Furthermore, this witness indicated that the money held by James Ivory in one of the seized photographs may have been money which he won playing the numbers.

Finally, the State re-called Officer Thomas in rebuttal. Thomas testified about exchanges he had with Harlan's attorney regarding the possibility of Harlan's avoiding indictment in exchange for providing information about drug activity. Thomas added that he had actually met with Harlan at the jail concerning such an arrangement but stated that ultimately no deal was completed.

Upon hearing this and additional proof, the jury convicted Jermaine and James Ivory as charged concerning the March and April of 1998 offenses. As aforementioned, James Ivory also subsequently pled guilty to additional charges. These defendants now appeal the trial court's denial of their motions to suppress, along with their conspiracy convictions and their sentences.

## Sufficiency

Both defendants assert that the proof is insufficient to support their convictions for conspiracy to sell 26 grams or more of cocaine. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all

---

[2] Further detail about this proof will be set forth during the Court's analysis of the sufficiency issue. See infra.

reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Id. at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," a criminal offense may be established exclusively by circumstantial evidence. State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

In order to sustain a conspiracy conviction, Tennessee Code Annotated section 39-12-103(a) requires the State to prove that:

> two (2) or more people, each having the culpable mental state
>
> required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a). The remaining pertinent portion of this statute provides that "[n]o person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d).

The proof of Jermaine Ivory's involvement in the sale of cocaine is overwhelming and need not be reiterated here. A fortiori, if the proof is sufficient to establish that James Ivory conspired with Jermaine to engage in the sales, the proof is sufficient to establish the guilt of both defendants on the conspiracy count in the indictment.

James Ivory alleges that there is insufficient proof to establish that he acted in concert with Jermaine or that there was a meeting of the minds between them. We must respectfully disagree.

Although the informant, Mr. Woodland, was less than a model of clarity on this point, he did state at various times in his testimony that James Ivory had been present at both controlled buys of cocaine. On the second buy James accompanied Jermaine to the kitchen where crack was being prepared. James Ivory was present at the residence when the search occurred and various items used in the sale and/or use of narcotics were seized. Many of these items were seized from the common areas of the residence. Police also recovered a photograph of the apparently unemployed James Ivory holding up an unknown quantity of cash. While we acknowledge that the proof of James Ivory's involvement in a conspiracy with Jermaine is not exactly overwhelming, we believe it is sufficient to convince a rational trier of fact that in fact James was engaged in such a conspiracy. This issue therefore affords neither defendant a basis for relief on appeal.


**Suppression of Items Seized Pursuant to the Search**

The defendants further claim that the trial court erred in failing to suppress the evidence seized in the April 6, 1998 search executed at 2207 Fourteenth Avenue, North. James Ivory also

avers that the trial court erred in not suppressing the fruits of the November 19, 1998 search. Though two searches are involved, the alleged basis for relief remains the same; the defendants aver that suppression is mandated because the police did not comply with the "knock and announce" procedure prior to entering the residence and that no exigent circumstances existed justifying failure to do so.

Before delving into an analysis of these searches, we must address the matter of whether James Ivory has waived his challenges to them. The State correctly observes that James Ivory never filed a new trial motion raising claims regarding the April search nor did he reserve any issue regarding the November search as a certified question of law when he pled guilty to the offenses surrounding the November search.

Concerning the first of these assertions, Tennessee Rule of Appellate Procedure 3(e) clearly provides

> that in all cases tried by a jury, <u>no issue presented for review shall be predicated upon error in the admission or exclusion of evidence</u>, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, <u>or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial</u>; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e) (emphasis added). This defendant has, therefore, waived this issue. <u>See</u>, <u>e.g.</u>, <u>State v. Alvin B. Tate</u>, No. W1999-012240-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 473, at *5-*6 (Tenn. Crim. App. at Jackson, June 16, 2000).

We next address the question of whether James Ivory sufficiently preserved his right to appeal the November 19th search. Since the convictions arising from this search arose out of guilty pleas, we note that Tennessee Rule of Criminal Procedure 37, in pertinent part, provides:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: . . .
> (2) upon a plea of guilty or nolo contendere if:
> (i) the defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (A) the judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;
> (B) the question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (C) the judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
> (D) the judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case; or
> (ii) the defendant seeks review of the sentence set and there was no plea agreement under Rule 11(e); or
> (iii) the error(s) complained of were not waived as a matter of law by the plea of

guilty or nolo contendere, or otherwise waived, and if such errors are apparent from the record of the proceedings already had; or

(iv) the defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case.

Tenn. R. Crim. P. 37(b). Although available to a defendant to challenge a search following a guilty plea, James Ivory failed to comply with this procedure. See, e.g., State v. Simpson, 968 S.W.2d 776, 778 (Tenn. 1998); State v. Evelyn C. Bostic, M2000-03011-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 180, at *2-*3 (Tenn. Crim. App. at Nashville, Mar. 8, 2002). He has, therefore, waived his challenge to the November search.

Based upon this finding, we need only address Jermaine Ivory's properly preserved contention regarding an alleged violation of the knock and announce provision during the April 6, 1998 search. In considering the matter, we recognize that we are to uphold a trial court's factual findings from a suppression hearing "unless the evidence preponderates otherwise." State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). Therefore, issues regarding the "credibility of witness, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial judge," and this Court is to afford the prevailing party "'the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.'" Id. (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 2001)). Nevertheless, this Court "is not bound by the trial court's conclusions of law." Randolph, 74 S.W.3d at 33.

Turning more specifically to the concern at hand, Tennessee Rule of Criminal Procedure 41(e) provides:

If after notice of authority and purpose a peace officer is not granted admittance, or in the absence of anyone with authority to grant admittance, a peace officer with a search warrant may break open any door or window of a building or vehicle, or any part thereof, described to be searched in the warrant to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property.

Tenn. R. Crim. P. 41(e); see also State v. Fletcher, 789 S.W.2d 565, 566 (Tenn. Crim. App. 1990). This knock and announce rule is not merely a statutory or court rule; it is part of the requirement under the Fourth Amendment to the United States Constitution that searches be reasonable. Wilson v. Arkansas, 514 U.S. 927, 930, 115 S. Ct. 1914, 1916, 131 L. Ed. 2d 976 (1995). The requirement mandates that officers (a) identify themselves as law enforcement officials and (b) explain the purpose of their presence, i.e. the execution of a search warrant. W. LaFave, Search and Seizure, § 4.8(c) at 606-07 (3d ed. 1996). If the officer is not admitted to the residence after giving proper notice, the officer is authorized to "break open any door or window of a building or vehicle, or any part thereof, . . . to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property." Tenn. R. Crim. P. 41(e). A threefold purpose exists for the knock and announce rule:

First, it provides protection from violence, assuring the safety and security of both the occupants and the entering officers. . . . Second, it protects "the precious interest

of privacy summed up in the ancient adage that a man's house is his castle". . . . Finally, it protects against the needless destruction of private property.

U.S. v. Moreno, 701 F.2d 815, 817 (9th Cir. 1983), rev'd on other grounds, United States v. Moreno, 469 U.S. 913, 105 S. Ct. 286, 83 L. Ed. 2d 223 (1984); see also, State v. Lee, 836 S.W.2d 126, 128 (Tenn. Crim. App. 1991) (citing this quotation in explaining the rationale for the knock and announce rule).

"Absent exigent circumstances, officers must 'wait a reasonable period of time before [they] may break and enter into the premises to be searched." Lee, 836 S.W.2d at 128 (footnote omitted) (quoting State v. Carufel, 314 A.2d 144, 146 (R.I. 1974)). In State v. Fletcher, this Court indicated that "sounds indicative of flight or destruction of evidence -- running, scuffling, or toilet flushing" could excuse compliance with the knock and announce rule. Fletcher, 789 S.W.2d at 566.

In denying the defendants' motion regarding the April 6, 1998 search, the trial court found that viewing the testimony as a whole, particularly that of Officer Thomas, the authorities complied with the knock and announce provision. En route to this finding, the court acknowledged the following exchange highlighted by the defense: Jermaine Ivory's defense counsel: "[T]here was no waiting for anyone to come to the door, was there?" Thomas: "No sir, the door was open."

However, reviewing the entirety of this witness' testimony, the trial court further stated:

> Prior to this question, Officer Thomas testified that he could see defendant David Ivory standing in the hallway of the residence. He also testified that he waited at least five (5) seconds before entering the residence and answered "no" to counsel's question asking whether he entered the residence simultaneous to knocking. When Officer Thomas was recalled to the witness stand on August 20, 1999, defense counsel specifically asked the officer if there was enough time for anyone to come from the back of the house in order to answer the front door. The officer answered[,] "Yes, they could have." Defense counsel then replied[,] "They would have had to run, wouldn't they?" The officer answered[,] "The house is not that large." Defense counsel again asked the officer[,] ". . . you didn't wait any time for anybody to come. Is that right?" The officer answered[,] "I gave them a few seconds. Yes sir, I did."

The trial court then found as follows:

> Clearly the factors that this Court must consider indicate that Officer Thomas was in compliance with Rule 41(e). The officer's testimony, which the Court credits, indicated that he took the following actions in executing the warrant: (1) knocked on the metal storm door of the premises; (2) announced "police, search warrant"; and (3) waited at least five seconds before entering the defendants' residence. Further, he stated that five (5) seconds was a reasonable time for the defendants to have answered the door of the residence, considering the small size of the residence. Also relevant in the analysis was Officer Thomas's testimony that he could see defendant David Ivory through the front door standing in the hallway of the residence. This suggests that the five (5) second wait before entering was more than reasonable. One

further factor which cannot be ignored concerns the presence of drugs believed to be in the apartment.

Additionally, the trial court found problems with the proof presented by the defense. For example, the court raised credibility concerns about the two neighbors testifying regarding this matter and found that these individuals likely did not have adequate lines of sight to determine whether the officers had complied with this procedure. Furthermore, the trial court stated that the proof supported the conclusion that James and David Ivory "were apparently asleep" when Officer Thomas knocked and announced.

From our review this is an extremely close case.[3] Primarily, we are concerned about the alleged passage of only five seconds between Officer Thomas' knocking and announcing and his opening the unlocked door himself to enter. Thomas' testimony that David Ivory was "coming up the hallway at th[is] time" further complicates the matter.

Had Thomas entered simultaneously with his knocking and announcing, he would have failed to comply with this provision, and the presence of exigent circumstances would have been necessary to excuse this failure.[4] See Lee, 836 S.W.2d at 129. However, even though the officer's estimated five second wait is admittedly a short period of time, the trial court found it to be reasonable based in part upon the size of the house and David Ivory's presence in the hallway. The combination of a photograph of the residence's exterior and a diagram of its interior, both made exhibits to the trial, lend credence to this conclusion. From these exhibits it appears that the officer could only see a small portion of the hallway from the area outside the front door because of the direction in which the hallway runs. Moreover, neither James nor David Ivory claim that a lack of time prevented them from voluntarily admitting the officers since both denied hearing Thomas knock and announce. Under all of these circumstances and affording the State the strongest legitimate view of the evidence presented, we cannot say that this period of time constituted an unreasonable delay prior to Thomas' opening the unlocked door and entering. We, therefore, conclude that this issue lacks merit.

## **Sentencing**

Finally, both Jermaine and James Ivory assert that they received excessive sentences. James Ivory avers that since the trial court found no enhancement factors appropriate, the court inappropriately sentenced him to the maximum for each conviction. In addition, Jermaine Ivory contends that his maximum sentences for each conviction are not validly supported by the record.

---

[3] A minor discrepancy involves finding that James Ivory was asleep. Though the record seems to indicate that this defendant was in bed when Officer Thomas knocked, there is no mention of his being asleep during this daytime search. While this conflicts with the trial court's finding, it is not a crucial conflict. Since both defendants denied hearing Thomas knock and announce, neither claim that they were attempting to respond by opening the door but were not given time to do so.

[4] The defense claims that the trial court erred "in refusing to suppress evidence resulting from the execution of a search warrant by the police without knocking and announcing based on exigent circumstances." Nevertheless, as above-noted, we observe that the trial court found Thomas in compliance with the knock and announce provision.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider a defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, the sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the individual defendant's statements. Tenn. Code Ann. §§ 40-35-103(5)-210(b); Ashby, 823 S.W.2d at 169. We are also to recognize that the defendant bears the burden of demonstrating that the sentence is improper. Ashby, 823 S.W.2d at 169.

Furthermore, under Tennessee Code Annotated section 40-35-210, the presumptive sentence for a Class B, C, D or E felony is the minimum within the applicable range unless enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Nevertheless, the trial court must make on the record specific findings of fact supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Tenn. Code Ann. § 40-35-210(f).

In the instant case James Ivory contests the sentences he received for two counts of E felony possession of a schedule VI substance (marijuana) for resale; one count of E felony possession of weapons, one count of B felony conspiracy to sell 26 grams or more of cocaine, and one count of B felony possession of a schedule II controlled substance (cocaine) for resale. He does not, however, contest his status as a multiple offender. Therefore, the applicable range for the E felonies in this situation is "not less that two (2) nor more than four (4) years" while the range for the B felonies is "not less than twelve (12) nor more than twenty (20) years." Tenn. Code Ann. § 40-35-112(b)(2), (5).

As aforementioned, this defendant asserts that the trial court found no enhancement factors applicable to his convictions yet still sentenced him to the maximum for each of these offenses. To support this claim, he states that "the Trial Court affirmatively found that no enhancement factors, as set forth under Tennessee law, were applicable in this case." After reviewing the transcript, we agree that the trial judge did state, "[A]nd for the record, I do not – I've looked at all the enhancement factors and do not find that any of those apply."

However, even a cursory reading of the transcript reveals that the trial court likely intended to reference mitigating rather than enhancement factors in this statement since the court had made a detailed finding regarding the applicability of three enhancement factors only moments earlier. More specifically, the trial court found that James Ivory "has a previous history of criminal behavior[,] . . . has a previous history of unwillingness to comply with conditions of a sentence[, and] . . . possessed a firearm during the commission of these offenses." See Tenn. Code Ann. § 40-

35-114(1), (8), (9) (Supp. 2001).[5] The court also concluded that each of these factors applied to all four of the convictions.

From our review of the record, we agree that two of these are applicable to the convictions at issue here. The pre-sentence report reflects that James Ivory previously had been convicted of resisting arrest, evading arrest, and, on two occasions, criminal trespass. These convictions were in addition to those for robbery and C felony theft, which were used to support this defendant's classification as a multiple offender. The trial court, thus, correctly concluded that enhancement factor (1) (regarding prior criminal convictions/behavior) applied to each of the convictions for which he faced sentencing in this case. See Tenn. Code Ann. §40-35-114(1) (Supp. 2001). Furthermore, the pre-sentence report reflects that the defendant's parole on the latter two felony convictions was revoked in December of 1994. Enhancement factor (8) (regarding a prior unwillingness to abide by conditions of release into the community), therefore, also applied to the four convictions on which the trial court sentenced James Ivory. See Tenn. Code Ann. § 40-35-114(8) (Supp. 2001).

As above-noted, the trial court also found enhancement factor (9) (regarding possession of a firearm while committing the crime) applicable to each of the four convictions. See Tenn. Code Ann. § 40-35-114(9) (Supp. 2001). We cannot agree with this finding as it concerns the weapons possession offense. Enhancement factors forming essential elements of an offense may not to be used to enhance that offense. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); State v. Spratt, 31 S.W.3d 587, 608 (Tenn. Crim. App. 2000); see also Tenn. Code Ann. § 40-35-114. It follows that this factor is not applicable to enhance the sentence on this weapon conviction. However, the remaining applicable enhancement factors justify the imposition of a four-year sentence on the weapons offense. Factor (9) is appropriate for use with the remaining convictions since the first search of this home which served as a base for distributing narcotics resulted in the recovery of numerous weapons while yet another weapon was recovered in the second search. See State v. Robert L. O'Neal, No. 01C01-9601-CC-00438, 1997 Tenn. Crim. App. LEXIS 1338, at *8 (Tenn. Crim. App. at Nashville, Dec. 30, 1997); State v. Bruce Fidel Woodard, No. 01-C-01-9108-CR-00251, 1992 Tenn. Crim. App. LEXIS 82, at *2-*3, *5-*6 (Tenn. Crim. App. at Nashville, Jan. 31, 1992); State v. Milton Jerome Johnson, No. 139, 1991 Tenn. Crim. App. LEXIS 198, at *2, *7-*8 (Tenn. Crim. App. at Jackson, Mar. 20, 1991).

As we noted previously, it appears that the trial court attempted to state that it found no mitigating factors applicable. Nevertheless, since it technically did not do so, we have reviewed these factors and find none applicable.[6] See Tenn. Code Ann. § 40-35-113. We therefore affirm James Ivory's sentences.

---

[5] A 2002 amendment to this statute added a new (1) enhancement factor, renumbering the already existing factors (1) through (22) as (2) through (23). See Tenn. Code Ann. § 40-35-114 "Amendments." For the purposes of this opinion, we will use the previous designations applicable at the time of sentencing.

[6] We further note that within his brief this defendant did not contend that any particular mitigating factor applied to his convictions.

-10-

As noted above, Jermaine Ivory also asserts that he received an excessive sentence. More specifically, this defendant appears to contend that the trial court did not clearly apply enhancement factors to allow this Court to adequately review the sentences imposed and that the trial court "contruct[ed] its own facts in determining" his sentence.

We first examine this defendant's alleged confusion concerning the trial court's application of the possession of a weapon enhancement factor to "Count Three" despite the fact that the record does not support the existence of a conviction on this count. In reviewing this issue, we find that the trial court was referring to this defendant's conspiracy conviction, though this offense was charged in count 8 of the relevant indictment. Earlier in the proceeding and pursuant to a motion by the defense, the trial court had severed counts 3 through 7 of this indictment for trial at another time. Thus, when counts 1, 2, and 8 proceeded to trial, the lower court began referring to count 8 as count 3 in the jury's presence. Such references may be seen in the jury instructions given by the trial court. Furthermore, in announcing its findings relative to this charge, the trial court stated, "And, in terms of enhancing factors, the Court finds three, one of which would apply only to Count Three, but the – that one being the possession of firearms during the commission of the felony – I think can be applied to Count Three, in terms of the conspiracy." Combining what we consider to be the meaning of this statement with the trial court's aforementioned references to the conspiracy charge as count 3, we respectfully disagree with this defendant's argument that the record fails to indicate to which offense this factor was applied.

We next consider his allegation "that the Court . . . construct[ed] its own facts in determining" the appropriate sentence. This defendant particularly complains that the trial court inferred that the two drug sales involved in this case were not the only two with which he had been involved. As a matter of fact, the trial court did state as follows:

> And I agree with the State, in terms of the proof that the Court's heard about Mr. Ivory's livelihood during the three years – approximately three years he was out on parole; that is, that they involved the sale of drugs. . . . [I]t's also clear to the Court that Mr. Ivory was involved in the sales of cocaine. And I don't think its stretching the facts of this case very much to – for the Court to conclude that these weren't Mr. Ivory's only two drug sales. With the money, the gloves, everything that was found there in the house, it's obvious that Mr. Ivory, with other individuals – he being the main one – made his livelihood selling cocaine.

The record reflects that such seems to have come to the trial court's mind while discussing enhancement factor 13(B), i. e. that the defendant was on parole at the time of the commission of these offenses. See Tenn. Code Ann. § 40-35-114 (13)(B) (Supp. 2001). We find that these comments, rather than relating to any enhancement factor, concern the trial court's subsequent finding that this defendant is "a professional criminal and would qualify as that for consecutive sentencing purposes." See Tenn. Code Ann. § 40-35-115(b).

Additionally, Jermaine Ivory contests his sentence based upon the trial court's alleged lack of clarity concerning possible consideration of arrests not leading to convictions. Within his brief this defendant states, "[t]he Court also considered, 'other arrests that did not lead to convictions' _noting_ 'and I cannot consider; but I think that factor, although receiving minimal weight, can be applied.'"

Again, to place the comments in context, the reviewer must look at the trial court's statements preceding and following those highlighted by the defense. Thus, in greater detail the trial court stated,

> In terms of the third factor that would apply to all, that is, that he has been convicted of delinquent acts as a juvenile, which would be a felony as an adult. The only one I can consider that, according to the presentence report, was actually a conviction and a felony – there were several misdemeanor and drug and violation of probation convictions – but also a felony possession for resale conviction as a juvenile. There were other arrests that did not lead to convictions, and I cannot consider; but I think that factor, although receiving minimal weight, can be applied.

While it is true that the trial court might have more clearly stated its finding in this regard, we remain convinced that the court justifiably applied enhancement factor (20), that "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." See Tenn. Code Ann. § 40-35-114(20) (Supp. 2001). Based upon the above, we conclude that the trial court's intent in making the statement referenced by the defense was to note that certain of this defendant's arrests could not be considered for enhancement purposes. However, the trial court also correctly indicated that the defendant had been adjudicated delinquent based upon a possession of a controlled substance for resale offense and that this adjudication would support the application of enhancement factor (20). Contrary to this defendant's assertion, the trial court clearly indicated that it applied this factor to all three convictions (though affording the factor little comparative weight). For these reasons we find the trial court's actions in this regard were appropriate, and we conclude that this portion of the defendant's contention lacks merit.

Briefly, we observe that this defendant faced sentencing as an uncontested multiple offender for three B felonies. His applicable range of punishment, therefore, fell between twelve and twenty years for each of these convictions. See Tenn. Code Ann. § 40-35-112(b)(2). As noted previously, the trial court sentenced the defendant to eighteen years on the possession for resale offenses and to twenty years on the conspiracy offense. In handing down these sentences, the trial court observed that the defense did not argue the applicability of any mitigating factors, and the court specifically found that none applied to any of the three convictions. Furthermore, as referenced above, the court found enhancement factors (13)(B) (dealing with the defendant's commission of the offense while on parole for a prior felony conviction) and (20) (dealing with the defendant's prior adjudication as "hav[ing] committed a delinquent act or acts as a juvenile that would constitute a felony is committed by an adult") appropriate for use with the possession for resale convictions. See Tenn. Code Ann. §40-35-114(13)(B), (20) (Supp. 2001). In addition, the trial court concluded that these factors applied to the conspiracy conviction and that factor (9) (dealing with possessing a weapon during the commission of the offense) was also appropriate for use in enhancing the sentence for this conviction. See Tenn. Code Ann. §40-35-114(9) (Supp. 2001). The record further indicates that the trial court placed little emphasis on factor (20) but afforded factor (13)(B) the most weight. We find

that the record supports the imposition of each of these factors.[7] Based upon this and the previously stated reasons, we conclude that this issue as a whole lacks merit and that this defendant is not entitled to sentencing relief.

## **Conclusion**

For the foregoing reasons, the judgments of conviction and the sentences of both defendants are AFFIRMED.

_____
JERRY L. SMITH, JUDGE

---

[7] At the time of the offense, this defendant was on parole for aggravated robbery and attempted second degree murder. In addition, the presentence report indicates that this defendant had been adjudicated delinquent for possessing a controlled substance for resale. Finally, numerous weapons were recovered from the home seemingly serving as the physical center for the conspiracy. The electricity at this residence was in this defendant's name; this defendant made the two drug sales from within this location; etc.